EDWARD H. KUBO, JR.  2499
United States Attorney
District of Hawaii

R. MICHAEL BURKE  1902
Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg.
300 Ala Moana Boulevard
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-3752
E-mail: Mike.Burke@usdoj.gov

Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA, ) | CIVIL NO. 04-00723 JMS-KSC |
| ) | |
| Plaintiff, ) | CONCISE STATEMENT IN SUPPORT |
| ) | OF DEFENDANT'S MOTION TO |
| vs. ) | DISMISS, OR IN THE |
| ) | ALTERNATIVE, FOR SUMMARY |
| Federal Fire Department; ) | JUDGMENT; DECLARATION OF |
| GORDON R. ENGLAND, Acting ) | PAUL M. SULLIVAN; EXHIBITS 1 |
| Secretary, Department of the ) | THROUGH 33; CERTIFICATE OF |
| Navy, ) | SERVICE |
| ) | |
| Defendants. ) | |
| ) | |

CONCISE STATEMENT IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Local Rule 56.1, of the Local Rules of Practice for the United States District Court for the District of Hawaii, defendant United States hereby submits its separate concise statement of material facts in support of its motion for summary judgment as to subject-matter jurisdiction. The motion is being filed contemporaneously with this statement.

DEFENDANTS' STATEMENT OF FACTS

| FACTS | EVIDENTIARY SUPPORT |
|---|---|
| 1. At all times relevant to his claims in this action, Plaintiff, Milton K. Kaopua, was employed by the Federal Fire Department at Naval Station, Pearl Harbor, as a Supervisory Firefighter, GS-0081-07. | Ex 1. |
| 2. On October 10, 2001, Plaintiff was assigned as Fire Captain on Shift A at Fire Station 11 at the Naval Ammunition Depot at Lualualei, Oahu. There are two shifts, A and B, for firefighters at Station 11. The Fire Captain for Shift B was Robert F. Abad. | Ex 1. |
| 3. Plaintiff traces his conflicts with Captain Abad to 1998. In his sworn testimony to the Navy's investigator of his personnel complaint, plaintiff asserted, for example, that Captain Abad would change the hoses that he put on the fire apparatus when he came on duty; blamed his crew for throwing cigarette butts in the fishpond; and raised pigs at the station. | Ex 3 at 66. |
| 4. On October 10, Captain Abad spoke with Colin A. Hallberg, a police officer with the Naval Station Pearl Harbor Security force, to file a "breaking and entering" complaint against Plaintiff for cutting and removing a lock which Captain Abad had placed on an ice machine at the station. The police officer reported that the ice machine was government property and that Captain Abad had no right to lock it. | Ex 2. |
| 5. During his meeting with Officer Hallberg, Captain Abad said that he (Captain Abad) was tired of Plaintiff and added "I guess I'll just have to shoot him." Officer Hallberg suggested that it was not smart to make such a remark to a police officer and Captain Abad replied, "Well, that's what it is coming to." | Ex 2 at 209-210. |
| 6. On October 13, Officer Hallberg reported Captain Abad's statements to Plaintiff, who said he was going to contact Chief DeLaura, his supervisor. Four days after that, while talking with Chief DeLaura on an unrelated matter, Plaintiff reported the threat. | Ex 2 at 210. |

7. On October 27, 2001, Plaintiff went on sick leave and remained on sick leave until November 22, 2002. He sought medical attention and was eventually diagnosed with "adjustment disorder with mixed anxiety and depressed mood, but strong post traumatic stress symptoms as well." He was treated with a course of psychotherapy.     Exs 2 at 61; 4; 5; 6.

8. The Naval Criminal Investigative Service investigated Captain Abad's alleged threat and on July 15, 2002, the U. S. Attorney for the District of Hawai'i filed an information charging Captain Abad with terroristic threatening. On October 21, 2002, Mr. Abad was found not guilty of the charge.     Exs 2 at 210; 16; 17.

9. In spite of this acquittal, Mr. Abad's supervisor issued Captain Abad a Letter of Reprimand on November 27, 2002, for Inappropriate Language. Subsequently, on 14 August 2003, Captain Abad was given a three-day suspension for violating Chief DeLaura's order to avoid contact with Plaintiff.     Exs 18; 19; 20.

10. On October 26, 2001, Plaintiff obtained a temporary restraining order from a state court to prevent any action against him by Captain Abad.     Ex 7 at 5

11. On November 13, 2001, Plaintiff and Captain Abad were transferred from fire station 11. Plaintiff was transferred to fire station 14B and Mr. Abad was transferred to fire station 9A.     Ex 8

12. Plaintiff filed a Traumatic Injury and Claim for Continuation of Pay/Compensation (CA-1) reflecting his "date of injury" as October 13, 2001 with a notice date of November 26, 2001. The claim was not sent to the Office of Workers' Compensation Programs of the Department of Labor until March 2002.     Exs 9 at 21; 10; 11; 12.

13. In April 2002 the Department of Labor informed Plaintiff that his claim was an occupational injury rather than a traumatic injury and that a different claim form was necessary. This subsequent claim was accepted.     Exs 10 at 112; 12

14. Plaintiff submitted an Application to Become a Leave Recipient Under the Voluntary Leave Transfer Program. The application was dated January 24, 2002 and approved on February 15, 2002.     Ex 14

15.  Agency records reflect that the Leave Transfer Announcement seeking volunteers willing to transfer leave to Plaintiff was issued on February 19, 2002. The notice, however, was not immediately posted at the Lualualei fire station.  Plaintiff discovered that and notified his attorney who notified Navy personnel officials and the notices were then posted.  There was one leave donation that was incorrectly rejected, but when Plaintiff's attorney complained, the leave donation was approved. — Exs 13; 15.

16.  On April 24, 2002, Plaintiff's attorney sent a letter to FFD's servicing Labor Advisor, Ms. Hazel Wong addressing (among other things), the agency's asserted failure to reasonably accommodate Plaintiff's mental disability. — Ex 23.

17.  Ms. Wong was on leave, but her supervisor responded by letter of May 3, 2002 by asking Mr. Smith to specify the "work place accommodation" that he had in mind. — Exs 21; 23 at 244

18.  Mr. Smith informed the agency by letter of July 18, 2002 that until Plaintiff "has been assured that his work environment is safe he cannot successfully return to work, which should then be to his usual duty station in Lualualei." — Ex 23 at 245.

19.  Fire Chief Michael Jones notified Mr. Smith by letter of July 26, 2002 that steps were taken to ensure Plaintiff's safety by removing Captain Abad from Station #11, so there would not be any contact between them. — Ex 23 at 246.

20.  Further, Fire Chief Jones said Plaintiff could report to his former Station #11 (Lualualei) when he was released to return to work. — Ex 23 at 246.

21.  Following additional correspondence, the Navy in a letter from Hazel Wong dated September 16, 2002, set out in detail its plan to keep Captain Abad and plaintiff from having any contact at work. — Exs 24; 25; 26; 27.

22.  Plaintiff's doctor finally released him to return to duty on November 21, 2002. — Ex 28.

23.  Plaintiff also requested (through his attorney) 30 days of advanced sick leave on February 2, 2002. — Ex 29.

24.  Fire Chief Michael Jones approved nine days, and in a letter dated February 13, 2002, explained the reasons for his decision.  Ex 29 at 235

25.  Plaintiff contacted the EEO Office on July 25, 2002 to lodge a broad-based complaint of discrimination relating to the above events. The parties were not able to resolve the matter and on October 3, 2002 he filed his formal complaint alleging that he had been subjected to a hostile work environment, that he had been denied reasonable accommodation of his asserted mental disability, that his worker's compensation claim had been delayed and misprocessed and that his leave requests had been improperly handled or denied, all because of his race (Hawaiian), religion (Christian) and mental disability.  On February 26, 2004, the Administrative Judge (AJ) rendered her decision granting summary judgment pursuant to 29 C.F.R. § 1614.109(g).  In that decision she ruled against plaintiff on each allegation of his complaint.  Exs 1; 7.

26.  The AJ's ruling was accepted by the Navy in a Final Order dated April 15, 2004.  This Final Order was duly appealed to the EEOC which sustained the AJ's finding on September 10, 2004.  The instant suit followed.  Exs 32; 33.

DATED: March 15, 2006, at Honolulu, Hawaii.

           EDWARD H. KUBO, JR.
           United States Attorney
           District of Hawaii

              /s/ R. Michael Burke
By _____
           R. MICHAEL BURKE
           Assistant U.S. Attorney

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA, ) | CIVIL NO. 04-00723 JMS-KSC |
| ) | |
| Plaintiff, ) | CERTIFICATE OF SERVICE |
| ) | |
| vs. ) | |
| ) | |
| Federal Fire Department; ) | |
| GORDON R. ENGLAND, Acting ) | |
| Secretary, Department of the ) | |
| Navy, ) | |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| _____) | |

CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served upon the following at their last known address:

      Served Electronically through CM/ECF:

      ELBRIDGE W. SMITH   shlaw@hawaii.rr.com
      March 15, 2006


      DATED: March 15, 2006, at Honolulu, Hawaii.


                                         /s/ Myra Peterson
                                         _____