# Exhibit 9

Case 1:04-cv-00723-JMS-KSC    Document 14-11    Filed 03/15/2006    Page 1 of 17

26 November 2002

From: EEO Counselor, Human Resources Office, Navy Region Hawaii
To:   Deputy EEO Officer, Human Resources Office, Navy Region Hawaii

Subj: **REPORT OF COUNSELING EFFORTS IN THE COMPLAINT OF MR. MILTON KAOPUA**

Encl: (1) Notice of Rights and Responsibilities of Complainant of 8 Aug 02
      (2) Initial Intake of 8 Aug 02
      (3) Notice of Evidence Required to Establish Compensatory Damages of 8 Aug 02
      (4) Election of Pre-Complaint Counseling Process of 9 Aug 02
      (5) Request to Extend Counseling Period of 30 Aug 02
      (6) Police incident report # 016281303509 of 24 Oct 01
      (7) Doctor's slip of 23 Nov 01 from Dr. Mercado
      (8) Complainant's Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation (CA-1) of 26 Nov 01
      (9) Designation of Representative and Authorization to Release Information/Records form of 21 Dec 01
      (10) Application to Become a Leave Recipient Under the Voluntary Leave Transfer Program form of 24 Jan 02
      (11) Doctor's note of 25 Jan 02 from Dr. Dav'e, diagnosing complainant's mental illness, providing evidence of treatment, necessary accommodation and projected prognosis
      (12) Request for advanced sick leave of 2 Feb 02 from complainant's attorney
      (13) Letter, of 13 Feb 02, to complainant's attorney from Federal Fire Department Fire Chief, authorizing 9 days of advanced sick leave and explaining the days granted
      (14) Voluntary Leave Transfer Program Application authorization of 15 Feb 02
      (15) Leave Transfer Announcement for complainant of 19 Feb 02
      (16) Letter, of 15 Apr 02, from Dr. Ginandes to Worker's Compensation, outlining complainant's mental illness, the cause of the illness, the prognosis and the recommended treatment
      (17) Letter, of 24 Apr 02, to activity Labor Advisor from complainant's attorney, requesting information about the actions being taken regarding the complainant's alleged harasser and information via the Freedom of Information Act
      (18) Letter, of 3 May 02, to complainant's attorney addressing issues raised previously
      (19) Doctor's note, of 13 Jun 02, from Dr. Ginandes
      (20) Letter, of 18 Jul 02, to activity Labor advisor from complainant's attorney outlining and explaining what reasonable accommodation had been previously requested
      (21) Letter, of 26 Jul 02, to complainant's attorney from Federal Fire Department Fire Chief, offering the requested reasonable accommodation to the complainant

---

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

**/0**

(22) Letter, of 19 Aug 02, to this counselor from complainant's attorney, about the complainant not being provided leave donated by other federal employees and copies of the complainant's Leave and Earning Statements (LES) with estimated hours not paid by Worker's Compensation

(23) Letter, of 27 Aug 02, to complainant's attorney from activity Labor Advisor, requesting information about when complainant can return to work

(24) E-mail, of 29 Aug 02, to the Leave Transfer coordinator for COMNAVREG HI from activity Labor Advisor, explaining the situation with the complainant's donated leave

(25) Doctor's note, of 29 Aug 02, from Dr. Ginandes

(26) Letter, of 16 Sep 02, to complainant's attorney from activity Labor Advisor, outlining the decisions, efforts to accommodate, the investigations initiated and further explaining what steps were taken on behalf of the complainant

(27) Resource data from the Civilian Servicing Unit database showing the complainant's pay between 21 Apr 01 and 27 Jul 02

(28) Notes taken by Naval Station Personnel Office management analyst showing dates paperwork was received, processed and forwarded

(29) Notice of Right to File a Discrimination Complaint of 19 Sep 02

1. **COMPLAINT INFORMATION:**

   a. Name:   Milton Kaopua
              84-710 Kili Drive, Apt. 1313
              Waianae, HI 96792
              (808) 695-5199 (Unlisted)

   b. Employee Status:   Naval Station, Pearl Harbor, Hawaii
                         Federal Fire Department, Code N51A3
                         850 Ticonderoga St., Ste. 106
                         Pearl Harbor, HI 96860-5102
                         Supervisory Firefighter, GS-0081-07
                         Full time, permanent employee
                         (808) 668-3420

   c. Representative:   Elbridge W. Smith
                        Smith Himmelmann Attorneys
                        841 Bishop St, #909
                        Honolulu, HI 96813
                        (808) 523-5050

2. **DATES:**

   a.   Alleged discriminatory incident occurred:

---

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

      Claim.(a).  From November 1998

      Claim (b).  January 2002

      Claim (c).  26 November 2001

      Claim (d).  26 November 2001

      Claim (e).  August 2002

  b.  Request for counseling:  25 July 2002

  c.  Initial Intake:  8 August 2002

  d.  Final Interview:  19 September 2002

3. **CLAIMS:**

  Claim a.  From November 1998 to 23 July 2002, complainant was subjected to a hostile work environment caused by a harassing coworker that management was made aware of but took no prompt or continuing action to halt.

  Claim b.  In January 2002 complainant was denied reasonable accommodation by management despite requests by his doctors and attorney for the accommodation.

  Claim c.  Beginning on 26 November 2001 management delayed and failed to properly process complainant's OWCP claim form and information.

  Claim d.  Beginning on 26 November 2001, management failed to properly process and act on complainant's request for advance sick leave and inclusion in the Leave Transfer Program.

  Claim e.  In August 2002, personnel wishing to donate leave to him were informed that he was not eligible for leave donations because his worker's compensation claim was granted.

4. **BASES:**

  Claims a to e:  Race (Hawaiian), religion (Christian), mental disability (adjustment disorder with anxiety and depressed mood with symptoms of post-traumatic stress disorder).

5. **ELECTION OF PROCESS:**  On 9 August 2002, complainant elected to pursue the complaint through the traditional process, enclosure (4). On 30 August 2002, the complainant granted a request, to extend the counseling period until 19 September 2002, enclosure (5).

---

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

6. **RESOLUTION REQUESTED:** The complainant requested the following:

- to be returned to work at the fire station and the shift he had before he was reassigned;

- to be placed under the supervision of an area supervisor other than Glenn DeLaura;

- appropriate corrective action taken against the harassing co-worker;

- his safety will be assured by moving the harassing co-worker away from the fire station where he is to be assigned;

- compensatory damages in an amount to be determined later and;

- all attorneys' fees and costs to be reimbursed or paid.

7. **BACKGROUND INFORMATION:**

   a. Enclosures (1) through (29) are provided to document the inquiry discussed in this report.

   b. Complainant's allegations towards claims:

   - management has been aware of the harassment the complainant has been subjected to by a coworker since 1998, when the area chief was informed of the harassment;

   - the harassing coworker was in violation of several regulations and laws that the complainant brought to the attention of management personnel but no action was ever taken to address or end the violations;

   - the harassing coworker was continuously protected by the area chief and the other fire department managers because he and the area chief are good friends;

   - the area chief participated in and was a beneficiary of some of the illegal activities being conducted at the work site by the coworker;

   - his complaints of harassment made to the area chief and higher level managers were not looked into and usually resulted in his being told he needed to work it out with the coworker by himself and not continue to complain;

   - although he was the person who was threatened by a coworker he was reassigned to another fire station, which was farther away from his home than his original workstation;

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

- he was told by the area chief that the reason he was reassigned to another station house was because he filed a Temporary Restraining Order (TRO) against the harassing coworker;

- he was told by the area chief that the harassing coworker is a good man and takes the time to "relieve you when you go to church" and;

- he was misled about his rights regarding requests for advance sick leave and involvement in the Leave Transfer Program by management and the labor advisor for the Fire Department misinformed Fire Department personnel and personnel wishing to donate leave to him that resulted in his not receiving the donated leave in a timely manner.

c. Records show:

- a police incident report, enclosure (6), number 016281303509, dated 24 October 2001, documents the threat made against the complainant;

- a doctor's slip, enclosure (7), from Dr. Mercado, dated 23 November 2001;

- a Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation (CA-1), enclosure (8), from complainant, dated 26 November 2001;

- a Designation of Representative and Authorization to Release Information/Records form, enclosure (9), dated 21 December 2001;

- an Application to Become a Leave Recipient Under the Voluntary Leave Transfer Program form, enclosure (10), dated 24 January 2002;

- a doctor's note, enclosure (11), from Dr. Davè, diagnosing the complainant's mental illness and providing evidence of treatment, necessary accommodation and projected prognosis, dated 25 January 2002;

- a request for advanced sick leave, enclosure (12), from complainant's attorney, dated 2 February 2002;

- a letter, enclosure (13), to the complainant's attorney from the Federal Fire Department Fire Chief, authorizing 9 days of advanced sick leave and an explanation of the days granted, dated 13 February 2002;

- Voluntary Leave Transfer Program Application authorization, enclosure (14), dated 15 February 2002;

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

5

14

- a Leave Transfer Announcement for complainant, enclosure (15), dated 19 February 2002;

- a letter, enclosure (16), from Dr. Ginandes to Worker's Compensation, outlining the complainant's mental illness, the cause of the illness, the prognosis and the recommended treatment, dated 15 April 2002;

- a letter to the activity Labor Advisor, enclosure (17), from the complainant's attorney, requesting information about the actions being taken regarding the complainant's alleged harasser and information via the Freedom of Information Act, dated 24 April 2002;

- a letter to the complainant's attorney, enclosure (18), addressing issues raised previously, dated 3 May 2002;

- a doctor's note, enclosure (19), from Dr. Ginandes, dated 13 June 2002;

- a letter to the activity Labor advisor, enclosure (20), from the complainant's attorney outlining and explaining what reasonable accommodation had been previously requested, dated 18 July 2002;

- a letter to the complainant's attorney, enclosure (21), from the Federal Fire Department Fire Chief, offering the requested reasonable accommodation to the complainant, dated 26 July 2002;

- a letter to this counselor, enclosure (22), from the complainant's attorney, about the complainant not being provided donated leave by other federal employees and copies of the complainant's Leave and Earning Statements (LES) with estimated hours not paid by Worker's Compensation, dated 19 August 2002;

- a letter to the complainant's attorney, enclosure (23), from the Labor Advisor, requesting information about when the complainant can return to work, dated 27 August 2002;

- e-mail to the Leave Transfer coordinator for COMNAVREG HI, enclosure (24), from the Labor Advisor, explaining the situation with the complainant's donated leave, dated 27 August 2002;

- a doctor's note, enclosure (25), from Dr. Ginandes, dated 29 August 2002;

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

- a letter to the complainant's attorney, enclosure (26), from the Labor Advisor, outlining the decisions, efforts to accommodate, the investigations initiated and further explaining what steps were taken on behalf to the complainant, dated 16 September 2002;

- resource data from the database, enclosure (27), showing the complainant's pay 21 April 2001 and 27 July 2002;

- notes taken by the COMNAVREG HI management analyst, enclosure (28), showing dates paperwork was received, processed and forwarded;

8. **WITNESSES INTERVIEWED:**

Mr. Michael Jones, Fire Chief, GS-0081-14
Navy Federal Fire Department Fire Chief, Navy Region Hawaii, Code N51
Race (Hawaiian/Irish), religion (Catholic), no mental or physical disability
(808) 473-0343

Mr. Glenn DeLaura, Supervisory Firefighter, GS-0081-11
Navy Federal Fire Department Fire Chief, Navy Region Hawaii, Code N51A3
Race (Caucasian), religion (Christian), no mental or physical disability
(808) 473-1172

Mr. Damien Gilding, Supervisory Firefighter, GS-0081-11
Navy Federal Fire Department Fire Chief, Navy Region Hawaii, Code N51A3
Race (Caucasian), religion (Catholic), no mental or physical disability
(808) 473-3474

Mr. Peter Pappalardo, Supervisory Labor Relations Specialist, GS-0233-13
Human Resources Office, Navy Region Hawaii, Code N01CP.2
Race (Caucasian), religion (Roman Catholic) no mental or physical disability
(808) 474-3795

Ms. Hazel Wong, Labor Relations Specialist, GS-0233-12
Human Resources Office, Navy Region Hawaii, Code N01CP.2
Race (Japanese), religion (Christian), no mental or physical disability
(808) 474-3797

Ms. Patti De Vita, Employee Relations Specialist, GS-0230-11
Human Resources Office, Navy Region Hawaii. Code N01CP.1
Race (Japanese), religion (Buddhist), no mental or physical disability
(808) 474-5140

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

Mr. Colin Hallberg, Police Officer, GS-0083-06
Naval Station Pearl Security Detachment, Wet Loch/Lualualei, Code N509
Race (Caucasian), religion (Methodist), no mental or physical disability
(808) 471-5540

Ms. Julia Lucas, Management Analyst, GS-0343-09
Naval Station Pearl, Civilian Personnel Office, Navy Region Hawaii, Code N103
Race (Caucasian), religion (Catholic), no mental or physical disability
(808) 473-0054

9. **SUMMARY OF ALLEGATIONS AND INFORMATION/FACTS UNCOVERED DURING INQUIRY:**

**Claim a.** From November 1998 to 23 July 2002, complainant was subjected to a hostile work environment caused by a harassing coworker that management was made aware of but took no prompt or continuing action to halt.

(1) Management's Response:  The complainant and his alleged harasser were both captains of two different shifts in the same fire station. The two of them had disagreed and bickered about many things over the years and had both received letters of caution in September 2001 for failure to properly attend to their supervisory duties. The area chiefs reported no harassment charges by the complainant or his alleged harasser and at no time did the subject of there being a hostile work environment within the fire station come to the attention of the Department Fire Chief. In addition, the time frame cited by the complainant is questionable because he stopped coming to work after 26 October 2001 and was still not back at work effective 3 October 2002 and was not part of the work environment while he was absent from work.

(2) Summary of Interviews:

Mr. Jones stated that:

- it is a common occurrence for two shifts at a fire station to have differences of opinion on many matters and disagreements between shifts captains often result from those differences;

- what was happening at the Lualualei fire station seemed to be of a nature that the area chief was able to handle the difficulties because he was never informed by the area chiefs assigned there about problems they could not deal with;

- he was not aware of the situation between the two subordinate supervisors until he obtained the police incident report, enclosure (6), on 25 October 2002;

PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED

- he got the police report after making a trip to the Lualualei station house to speak with the complainant about what he said was a threat by another shift captain and;

- based on the incident report he asked the Navy Criminal Investigative Service to conduct an investigation and determine what the next step should be.

Mr. DeLaura stated that:

- he took over as the area chief for the Lualualei fire station and other stations effective 27 October 2001;

- he met with the Lualualei station personnel, including the complainant, on 11 October 2002 and at no time did the complainant or anyone else bring up any kind of incident about anything happening at the station;

- on 17 October 2001, he was informed that the complainant was involved in a verbal confrontation with another firefighter about government mail being hidden from the firefighter and he called the complainant to ask about the incident;

- at that time on 17 October 2001, the complainant informed him that the alleged harasser accused him of cutting a lock on the ice machine and he told the complainant he was going to be at the station on the next possible day to discuss the matter;

- on 19 October 2001 he met with the complainant about the mail incident and asked the complainant about what was going on at the Lualualei station;

- the complainant told him about being accused of cutting the ice machine lock and stated that he thought he knew where the missing mail was, but had nothing to do with it being missing;

- as he was leaving the station the complainant told him that the other shift captain had mad a threat to him, but did not appear fearful or worried about it;

- he told the complainant that he and the other shift captain needed to sit down and "iron out" their differences and quit acting like a couple of kids;

- because this kind of thing is a fairly common occurrence between shift captains he took no further action, thinking the threat was not a serious one;

- on 25 October 2001 he learned from the Fire Chief and the Deputy Fire Chief of the police incident report and that until he was given a copy of the incident report by the Fire Chief,

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

the complainant was not aware what the threat actually was and;

- on 25 October 2001 he told the Fire chief he would investigate the matter, but was told that "NIS is doing an investigation".

Mr. Gilding stated that:

- while he was the area chief, the complainant did not tell him anything about being harassed by the other shift captain at the station house at Lualualei;

- although the two men often had disagreements over many things involving the station house it was a common occurrence for shift captains at the same station to disagree in favor of their own shift over the other shift at the station house and;

- although he was aware of the complainant's race, he was not aware of the complainant's religion or of any mental disability he might have had.

Mr. Hallberg stated that:

- he was dispatched to the Lualualei Fire Station on 10 October 2001 to investigate a report of theft of private property;

- when he arrived he learned that some one had cut a personal lock that was on the ice bin of an ice machine in the firehouse and the lock belonged to Captain Robert Abad;

- he learned that the ice machine was government owned, not personal property, and told Mr. Abad that he could not make a charge of theft of the ice that was in the machine;

- Mr. Abad accused the complainant of cutting his personal lock and taking ice to give to his friends and relatives;

- when Mr. Abad was informed that there was nothing that Mr. Hallberg could do in the way of making an arrest he told Mr. Hallberg that he might as well "shoot" the complainant;

- he told Mr. Abad that he should not be making threats of harm in front of a police officer and Mr. Abad repeated the threat;

- he informed the complainant of a threat being made against him by Mr. Abad on or about 13 October 2001 and;

- after the complainant told him he had reported that incident through his chain of

PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED

command and nothing was done, he filed an incident report, enclosure (6), on the matter himself.

**Claim b.** In January 2002 complainant was denied reasonable accommodation by management despite requests by his doctors and attorney for the accommodation.

(1) Management's Response:   The letters and memorandum received from the complainant's doctors provided a diagnosis and a limited prognosis but not a specific accommodation required by the complainant in order to perform the essential functions of his position as a shift captain. The complainant's attorney and his doctors stated in the letters that the complainant could only return to work if the Fire Department could assure his protection and safety. Toward that end the complainant was reassigned to the Wheeler Fire Station and the alleged harasser was reassigned to the Iroquois Point Fire Station.

(2) Summary of Interviews:

Mr. Jones stated that:

- prior to his receipt of the attorney's letter to the labor advisor, enclosure (20), dated 18 July 2002, he reassigned the complainant and the alleged harasser to two different fire stations so that they would not come in contact with one another;

- he felt that satisfied the complainant's request for accommodation was in keeping with the Temporary Restraining Order (TRO) the complainant had issued against the alleged harasser and also met the requirements of assuring the complainant's protection and safety from the complainant's doctors;

- after the letter from the attorney, enclosure (20), he sent the attorney a letter, enclosure (21), dated 26 July 2002, stating the complainant could return to duty at the Lualualei Fire Station where he was previously assigned upon his release by his doctors and;

- there was never intent to deny the complainant the reasonable accommodation meant to assure his protection and safety.

Mr. Pappalardo stated that:

- the attorney's letter, enclosure (17), of 24 April 2002, questioned the agency's commitment to making a reasonable accommodation for the complainant;

- he answered the attorney's letter because the activity labor advisor was on leave and he is her supervisor;

- his letter, enclosure (18), dated 3 May 2002 asks for the specific accommodation being

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*



requested by the complainant so that a dialogue into accommodation could be opened and a decision made;

- the activity was committed to making an accommodation as indicated by the transfers of both shift captains as far away from one another as possible and;

- the labor advisor for the activity needed less vague information on the specific kind of accommodation being requested before continuing with that process.

**Claim c.** Beginning on 26 November 2001 management delayed and failed to properly process complainant's OWCP claim form and information.

(1) Management's Response:   The delay in processing the complainant's Office of Workers Compensation Program claim form was due in part to the misunderstanding as to which type of form was appropriate, by delay on the part of the complainant and by the loss of the original filing form, thus a need to file the claim again.

(2) Summary of Interviews:

Ms. DeVita stated that:

- the Notice of Traumatic Injury and Claim for Continuation of Pay/Compensation (CA-1) the complainant says he originally filed, enclosure (8), is dated 26 November 2001;

- her office received a Xerox copy of the form in question on 31 December 2001 and began processing the form effective that date by returning it to the Federal Fire Department for the supervisor to fill out the rest of the form;

- to be complete the form needed to be filled out by both the employee and the relevant supervisor of that employee;

- her office received the completed form on 13 March 2002 as submitted by Mr. De Laura, the complainant's supervisor;

- because the complainant filed an OWCP claim more than 30 days after the date he named as the date of the traumatic injury he was not automatically entitled to traumatic injury time off and was instead placed on sick leave until OWCP made a decision on his claim;

- in April 2002, OWCP sent the complainant a decision that his claim was an occupational injury instead of a traumatic injury because the injury occurred over a period longer than one work shift and;

---

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

- the complainant was given the opportunity to buy back his sick or annual leave at the appropriate reduced rate.

**Claim d.** Beginning on 26 November 2001, management failed to properly process and act on complainant's request for advance sick leave and inclusion in the Leave Transfer Program.

(1) Management's Response: The complainant's request for advanced sick leave was processed and acted upon in a timely manner and his request for inclusion in the Leave Transfer Program was also handled quickly and efficiently.

(2) Summary of Interviews:

Mr. Jones stated that:

- the Federal Fire Department received a letter from the complainant's attorney, enclosure (12), dated 2 February 2002, requesting Advanced Sick Leave, an Application to Become a Leave Recipient Under the Voluntary Leave Transfer Program, enclosure (10), dated 24 January 2002, accompanied by a doctor's letter, enclosure (11), dated 25 January 2002 and a Designation of Representative form, enclosure (9), dated 21 December 2001;

- as the department head, the authority to grant or deny the request for advanced sick leave was his and he issued a letter, enclosure (13), dated 13 February 2002, to the complainant's attorney, authorizing nine days of advanced sick leave for the complainant;

- he forwarded the Application to Become a Leave Recipient Under the Voluntary Leave Transfer Program, enclosure (10), which he approved for recommendation, to the Commanding Officer's office as that is the appropriate level for a decision on that matter;

- a letter approving the request for the complainant to become a leave recipient, enclosure (14), dated 15 February 2002 was sent to the complainant and;

- a Leave Transfer Announcement, enclosure (15), dated 19 February 2002 was generated and posted for a 30-day period.

Ms. Lucas stated that:

- her notes, enclosure (28), on the complainant's Leave Transfer Program request show that she received his paperwork on 13 February 2002;

- she was missing the complainant's original signature and the copy of his Leave and Earning Statement and contacted the activity's labor advisor for assistance that was provided on 14 February 2002;

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

- she forwarded the letter for the request to the Yeoman responsible for that program on 14 February 2002;

- on 13 May 2002, she received a telephone call from the complainant who told her he might want her to go wider in the system with the leave transfer request;

- after consulting with the fire department liaison she called the complainant back and explained that he might have to choose between being in the leave transfer program and receiving Worker's Compensation pay;

- the complainant told her he wanted to think about it and would contact her later to let her know what he wanted to do and;

- the complainant never contacted her again on the matter.

Ms. Wong stated that:

- the requests for advanced sick leave and participation in the Leave Transfer Program were processed as quickly as possible;

- during the time the Leave Transfer flyer was posted, she was informed that it was never posted on the bulletin board at the complainant's fire station at Lualualei;

- she checked and found that the information was correct and had the bulletin properly posted to the necessary time period and;

- as far as she is aware that was the only difficulty that arose in fulfilling the complainant's requests to the command.

Claim e.  In August 2002, personnel wishing to donate leave to him were informed that he was not eligible for leave donations because his worker's compensation claim was granted.

(1) Management's Response:    Due to confusion about the complainant's status regarding his receiving compensation from the Office of Worker's Compensation Program (OWCP), one individual who desired to donate leave to the complainant under the Leave Transfer Program was told he could no longer receive donated leave. That decision was reversed and the individual was allowed to donate leave to the complainant and did exactly that.

(2) Summary of Interviews:

Ms. Wong stated:

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*



- her communication with the Fire Department's Administrative Officer led her to believe that the Injury Compensation Office had informed the Fire Department that the complainant was no longer eligible for leave donation because he was being compensated for lost wages by the OWCP;

- in her letter, enclosure (26), dated 16 September 2002, to the complainant's attorney she acknowledged that she did not recall the complainant had a negative sick leave balance from advanced sick leave;

- after speaking with the complainant's attorney on 27 August 2002, she informed the personnel processing the leave transfer donations that the complainant was eligible to receive donations;

- she also asked the Leave Transfer Program Coordinator to contact the person who was mistakenly informed of the complainant's ineligibility to receive donated leave and allow that person to donate the leave as intended and;

- the error was hers and was quickly corrected so that the complainant did receive the leave donation.

Ms. DeVita stated that:

- in her discussion with the Fire Department's Administrative Officer, the fact the complainant had received advanced sick leave was never raised;

- her concern was that in the past, employees who were receiving OWCP payments had also received leave donated from the Leave Transfer Program and that had caused problems because it is not within the regulations to receive both and;

- no one asked her about the complainant's eligibility under the regulations and she did not tell the Administrative Officer that the complainant could not receive donated leave under any circumstances.

## 10. RESOLUTION ATTEMPTED:

Attempts at resolution by providing the complainant with the reasonable accommodation he requested were partially successful in that management offered to bring the complainant back to his original work site and shift.

## 12. SUMMARY OF FINAL INTERVIEW:

Final interview was conducted on 19 September 2002. At that time the complainant was

*PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED*

15



informed of his right to file a formal complaint, the issues that had been identified and inquired into, the time frame in which he had to file a formal complaint and where and how he could file one. A Notice of Right to File a Discrimination Complaint, enclosure (29), was issued along with a formal complaint form.

*[signature]*
EEO COUNSELOR

**PERSONAL DATA-TO BE TREATED IN CONFIDENTIAL MANNER IF RESTRICTED**