# Exhibit 13

Name: *Julia Lucas*

# AFFIDAVIT

*State of Hawaii*
*County of Honolulu*

I, Julia Lucas, at Pearl Harbor, Hawaii, make the following statement under oath or affirmation. Pursuant to Public Law 93-579 (Privacy Act of 1974), as an individual supplying information for inclusion in a system of records, I have been informed of the following:

EFFECTS OF NONDISCLOSURE: Disclosure of information by me is voluntary; however, I realize my failure to respond could result in a recommended disposition of the case on the basis of information available. Witnesses who are Department of Defense employees may be subject to administrative action for failure to testify.

AUTHORITY: The authority to collect the information requested by this interview is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as part of the record in an equal employment opportunity discrimination complaint or grievance investigation. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint or grievance. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Office of Personnel Management or Department of Defense activities, to the Federal intelligence agencies, or to others as published in the Federal Register.

1. What are your current position title, series, and grade level, and how long have you held this position?

I am Personnel Security Specialist, GS-0080-9, with the Navy Region, Hawaii, Administration Department, and I have held this position for 5 or 6 years.

2. Who are your first and second level supervisors?

My first level supervisor is Janice Toyama and my second level supervisor is LT Logan.

3. What are your major duties and responsibilities with respect to coordinating the Leave Transfer Program? How long have you served as the program coordinator? Who do you rely on for advice and guidance?

I am responsible for processing the leave donor forms and the forms of those who want to donate leave. I've been the program coordinator for about 5 years. I would first refer to the COMNAVREG instruction and if needed I could contact someone from HRO for further guidance and assistance.

4. Mr. Kaopua says management failed to inform him of correct procedures and his rights under the leave transfer program. Is this correct? Did he or his attorney ever ask you for information on the program's procedures or his rights?

NAME: Julia Lucas

I don't know – I'm not sure what was explained to him. Neither he nor his attorney has ever contacted me on this matter.

5. To your knowledge, did he ask anyone else?

I don't know.

6. He also says his request was not processed in a timely manner. Is this correct?

This is not correct, I believe it was processed in a very timely manner.

7. Was his request processed slower than anyone else's – particularly another employee in the Fire Department?

No.

8. Who is responsible for approving requests under the Leave Transfer Program?

The Executive Officer of Naval Station, Pearl Harbor and that is currently Commander James Stone. At the time of this particular action, it was Commander R. J. Petry.

9. What is Chief Jones' responsibility?

Chief Jones is a department head and the form requires the department head's approval before it gets to the XO.

10. He also claims he request was denied? Any truth to this?

His request was approved. I'm not aware of any denial of his leave donor request.

11. Who is responsible for posting the leave transfer flyer on the bulletin boards? When were you informed it was not posted, who informed you, and what happened?

I prepare the notices and put them in the guardrail boxes of everyone in the Region and at Naval Station. I'm not sure who actually posts the notices, but they are supposed to get posted. I was never told the notices were not posted; as far as I'm concerned, it was posted

and he donations from two employees – a total of 60 hours. No one from the Fire Department donated any annual leave.

12. Complainant subsequently asked to have the area of consideration expanded. Explain when he made this request, what this means and how this works?

He contacted me on May 13, 2002, and told me that he may want us to go out wider. I was then told by Flo Kaneda, the Customer Service Representative, NAVREG, who handles our payroll, that he could not receive leave donations and worker's compensation because that would result in dual pay. I called Mr. Kaopua and told him what Flo said and he told me that he wanted to think about it and would let me know. He did not call me back. Then on June 27, 2002, I called Lani, at the Fire Department, to follow up on his call, and she said she spoke to Patti DeVita and Hazel Wong and they told her he could not receive dual compensation.

13. Did you ever call Mr. Kaopua to tell him he had to choose between being in the leave transfer program and receiving worker's compensation?

No, I did not.

14. What happened next?

Nothing, I didn't do anything.

15. Was the area of consideration expanded?

He never called me back to ask me to expand the area, but a Leave Donor Request came in from his ex-sister-in-law (Aimee Jensen) who works for the Region, but is physically located at the Fleet Industrial Supply Center. She apparently didn't see the notice because she doesn't physically work at the Region, but she was eligible to apply and her donor form was processed and he received the donation. The form is signed by Aimee on 8/29/02 and it was approved on 9/11/02 by the Chief of Staff. It's hard for us to get the notices to the outlaying areas that don't come under the region.

NAME: Julia Lucas

16. Did Chief Jones or Chief DeLaura have any direct involvement in this matter – did they contribute to the confusion or cause the confusion?

Not to my knowledge. Chief Jones approved the leave donation request.

17. Was Mr. Kaopua harmed by the delay and/or confusion?

It is a voluntary program and I'm not sure how he was harmed.

18. Did Chief Jones or DeLaura ever say or do anything to indicate they would discriminate against Complainant for any reason?

No.

19. Did you discriminate against Mr. Kaopua for any reason?

No.

20. Did you have any involvement in the confusion regarding the dual compensation?

No.

21. For the record, what is your race?

I am Caucasian.

22. What is your national origin?

I am White.

23. Do you know Mr. Kaopua's religion?

I don't know his religion.

24. What do you identify with in terms of religion?

I am a Catholic.

NAME: Julia Lucas

25. Did you discriminate against him because of his mental disability?

No.

26. Do you have a disabling condition?

No.

27. Do you have anything else to add?

No.

### END OF STATEMENT

*I have read the above statement, consisting of 5 pages, and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.*

*Subscribed and sworn before me*
*at:* Pearl Harbor, HI
*on this* 16th *day of* July 2003

*(Signature)* OC= Honolulu

*Affiant's Signature:* Julia Lucas
*Title:* Civilian Personnel Liaison

*Page 5 of 5 pages*    /22    *Affiant's Initials:*