# Exhibit 31

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
SAN FRANCISCO DISTRICT OFFICE
350 THE EMBARCADERO, SUITE 500
SAN FRANCISCO, CA 94105-1260

Milton Kaopua
84-710 Kili Drive #1313
Waianae, HI 96729

   Complainant

v.

Gordon England, Secretary
Department of the Navy

   Respondent

EEOC NO. 370-2003-02350X

AGENCY NO. 03-62813-001

DATE: February 26, 2004

## DECISION GRANTING SUMMARY JUDGEMENT PURSUANT TO 29 CFR § 1614.109(g)

**I. INTRODUCTION**

The above-captioned matter was docketed on May 20, 2003. The complainant has met the administrative prerequisites, and this case is properly before an Administrative Judge for a Decision.

The agency filed a Motion for Findings and Conclusions Without a Hearing on November 25, 2003. Administrative Judge's Exhibit (AJE):1. The complainant filed a Response on December 19, 2003. AJE:2. The agency filed a Reply on January 6, 2004. AJE:3.

I have thoroughly reviewed the parties submissions and the investigative record, which I deem to be adequately developed. Based on my review of the entire record, I have determined that the complaint should be resolved without a hearing.

II. ISSUE

Does the record evidence, when considered in the light most favorable to the complainant, demonstrate that because of his race/national origin (Hawaiian), religion (Christian), and mental disability:

1. He was subjected to a hostile work environment from November 1998 to October 2002;

2. Since January 2002, management denied his request for reasonable accommodation;

3. From November 26, 2001 to October 2002, management delayed, misprocessed, and interfered with his Office of Workers' Compensation claim;

4. From November 26, 2001 to October 2002, management failed to inform him of correct advance sick leave and leave transfer procedures and rights; failed to timely process his requests; and denied his requests for advance sick leave and the voluntary leave transfer program?

III. APPLICABLE LAW

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972 (Title VII), prohibits discrimination in federal employment based on race, color, religion, sex, and national origin. 42 U.S.C. § 2000e-16.

Section 501 of the Rehabilitation Act of 1973, 29 U.S.C. § 791, as amended by the Rehabilitation Act Amendments of 1992, 29

2

U.S.C. § 791(g) (Rehabilitation Act), imposes on federal agencies a duty to take affirmative steps to insure that individuals with disabilities have equal access to employment opportunities in the federal government.

**Disparate Treatment Discrimination**

In any judicial or administrative proceeding involving an allegation of discrimination, it is the burden of the complainant initially to establish that there is some substance to the claim. The complainant may establish a prima facie case of disparate treatment with circumstantial evidence that raises an inference that the agency's actions were based on a proscribed factor, such as by showing (1) membership in a protected class, (2) tangible adverse treatment by the agency, and (3) treatment that was less favorable than the treatment received by similarly situated persons outside the complainant's protected class. Perryman v. Johnson, 698 F.2d 1138 (11th Cir. 1983).

Once the complainant establishes a prima facie case, the agency has the burden of production to clearly set forth the reasons for its actions against the complainant. Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248 (1981). If the agency satisfies its burden of production, the complainant must demonstrate that the reason articulated is not the true reason but is a pretext for discrimination. McDonnell Douglas Corp. v. Green,

3

411 U.S. 702 (1973); St. Mary's Honor Center v. Hicks, 509 U.S. 502 (1993).

Title VII also is violated when employees are required to work in a discriminatorily hostile or abusive environment; that is, an environment that is "permeated with 'discriminatory intimidation, ridicule, and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Meritor Savings Bank v. Vinson, 477 U.S. 57 (1986). See also, Oncale v. Sundowner Offshore Services, Inc., 523 U.S. 75 (1998); Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). Whether an environment is "hostile" or "abusive" is determined by the totality of the circumstances. "These may include the frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris v. Forklift Systems, supra. Title VII is not to be used as a "general civility code." Rather, "it forbids only behavior so objectively offensive as to alter the 'conditions' of the victim's employment." Oncale v. Sundowner Offshore Services, supra.

**Discrimination Under The Rehabilitation Act**

The Rehabilitation Act and the Commission's implementing regulations require federal agencies to give full consideration to the hiring, placement, and advancement of, and prohibit

4

discrimination against, qualified persons with a disability. 29 CFR § 1614.203 et seq. The complainant must establish that he is a qualified person with a disability; that is, a person who (1) has a physical or mental impairment which substantially limits one or more major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment who, with or without reasonable accommodation, can perform the essential functions of a position.

Federal agencies are not required to make reasonable accommodation if the agency can demonstrate that the accommodation would impose an undue hardship on the operation of its program. Disparate treatment analysis applies to Rehabilitation Act cases where the agency disavows any reliance on the complainant's disability in taking an action adverse to the complainant. Smith v. Barton, 914 F.2d 1330 (9th Cir. 1990).

**Summary Judgement Standard**

Issuance of a decision without a hearing is warranted if no material fact is in genuine dispute when the evidence is viewed in the light most favorable to the complainant. 29 CFR § 1614.109(g); Rule 56, Fed.R.Civ.P. The complainant bears the burden of coming forward with sufficient evidence of every element that the complainant must prove which must be evaluated in light of the proper standard of proof. Celotex Corp. v. Catrett, 477 U.S. 317 (1986). A hearing is not warranted unless the complainant provides

5

significant, probative evidence tending to support the complaint such that from this evidence the disputed fact could reasonably be resolved in the complainant's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986). Subjective belief or speculation as to motive, intent, or pretext is not sufficient to satisfy the complainant's burden. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The complainant also cannot withstand summary disposition simply by expressing an intent to challenge the credibility of the agency's witnesses on cross-examination. Lindahl v. Air France, 930 F.2d 1434 (9th Cir. 1991).

## IV. ANALYSIS

The complainant, Milton Kaopua, is employed by the United States Department of the Navy (agency), Naval Station Pearl Harbor, Hawaii. At the time of the events at issue in this case, he held the position of Supervisory Firefighter (Fire Captain) in the Fire Department assigned to Station #11, A Shift, Naval Magazine, Lualualei. The Captain on Shift B at that station was Robert Abad (Filipino).

The underlying events are not in dispute. This case arose from a "breaking and entering" complaint filed by CPT Abad on October 10, 2001, in which he accused CPT Kaopua of cutting off a lock on an ice machine that the former claimed was his personal property. According to the Police report, CPT Abad told the police officer that he was tired of CPT Kaopua, who thought he owned the

6

place, and that "I guess I'll just have to shoot him." IF:209. The complainant states that he previously had complained to agency officials that CPT Abad was raising pigs, fish, and escargot on Fire Department time and property, failing to properly maintain Department equipment, and taking government property for his own use, but that no one had addressed these complaints. AJE:2.

On or about October 17, 2001, the complainant learned of CPT Abad's comment to the police officer that he would just have "to shoot" the complainant when his (and CPT Abad's) first-level supervisor, Assistant Fire Chief Glenn DeLaura (varied ethnic background including Hawaiian and Filipino), contacted the complainant to find out what was going on between him and Abad. The complainant filed a formal police complaint against CPT Abad and secured a temporary restraining order. At that point, Chief DeLaura decided to transfer both Captains, the complainant to Station #14, Wheeler Army Air Field, and CPT. Abad was transferred to Station #9, Naval Magazine, West Loch, effective December 2, 2001. IF:217-218. Before the transfers became effective, the complainant went on an extended period of leave, from October 27, 2001 until November 22, 2002.

### A. Hostile Work Environment: November 1998 to October 2002

The complainant's first claim is that between November 1998 and October 2002, he was subjected to a hostile work environment by a co-worker, that management was aware of the problem but did not

7

take corrective action. Generally, the complainant asserts that the Department never responded to his complaints about Abed's illegal activities at the Fire Station and that Department officials did not take Abed's threat to shoot him seriously. Moreover, he viewed his transfer as punitive and humiliating. AJE:2.

The undisputed evidence shows that the complainant was on leave and did not report to work after October 27, 2001. Since did not return to work until November 22, 2002, he could not have been subjected to a hostile work environment for the period October 27, 2001 to the end of the time period alleged, October 2002. The undisputed evidence further shows that the complainant did not contact an EEO Counselor until July 25, 2002. A federal employee who believes that he is the victim of discrimination must contact an EEO Counselor within 45 days of the date of the discriminatory event. Obviously, July 25, 2002, is long after this deadline because the complainant had not been at work since the end of October 2001, when the hostile work environment would have ceased. As such, the complainant failed to timely raise the hostile work environment claim with an EEO Counselor. Failure to meet the regulatory time limit mandates the dismissal of this claim. 29 CFR § 1614.107(a)(2).[1]

---

[1] Even if this claim were considered on the merits, the complainant has failed to present evidence from which a reasonable fact finder could infer that he was required to work in an

8

B. Denial of Reasonable Accommodation: From January 2002

As is noted above, the complainant was off work from October 27, 2001 through November 22, 2002. As such, he was not available to be accommodated during the period January 2002 through the date his doctor released him to return to work, November 21, 2002. Nonetheless, the undisputed evidence shows that in a letter dated September 16, 2002, the Fire Chief, Michael Jones, informed the complainant that he could return to work at Station #11 (Lualualei), his prior Station, and that Captain Abad had been removed from this station, thus insuring that the complainant would not have any contact with Captain Abad. IF:275-277. The complainant did not return to work for over two months after this accommodation was offered to him.

Even if I accept as fact that the complainant is a qualified individual with a disability for the purpose of this Decision, the undisputed evidence shows that the agency offered to accommodate the complainant several months before he was released to, and did

---

environment permeated with intimidation, ridicule, and insult that was sufficiently severe or pervasive to alter the conditions of his employment and create an abusive working environment. The facts in the record also fail to raise an inference that any conduct by agency officials was because of the complainant's Hawaiian background, his Christian religion, or any other unlawful factor. The complainant was not diagnosed with a mental impairment until at least October 27, 2001, when he first visited Dr. Herminio Mercado. AJE:2, attachment. As he was on leave from his job as of that date, his condition could not have been known to agency officials, thus it could not have been a motivating factor, even assuming that the impairment constitutes a disability.

9

in fact, return to work. The only inference to be drawn from these undisputed facts is that the agency did not fail to provide the complainant with a reasonable accommodation. Accordingly, the complainant cannot raise a genuine dispute of fact on his claim that the agency failed to accommodate his disability as a matter of law.

### C. Mishandling OWCP Claim: November 26, 2001-October 2002

The undisputed evidence shows that the complainant submitted a Traumatic Injury and Claim for Continuation of Pay/Compensation (CA-1) form which indicates the "date of injury" as October 13, 2001 and the "date of the notice" as November 26, 2001. IF:220. The agency controverted this claim because if was not submitted within 30 days of the date of the injury but, apparently, the agency did not send the completed forms to the Department of Labor, Office of Workers' Compensation Programs (OWCP) until March 2002. In April 2002, the Department of Labor informed the complainant that his claim was an "occupational injury" instead of a "traumatic injury," requiring the completion of a different claim form. IF:280. Subsequently, the claim was accepted, and Mr. Kaopua has collected workers' compensation benefits since mid-2002.

As is discussed above, the complainant did not contact an EEO Counselor until July 25, 2002. This date is more than 45 days following the alleged discriminatory act by the agency of failing

10

to submit his OWCP claim until March 2002.[2] Accordingly, this claim must be dismissed as untimely raised. 29 CFR § 1614.107(a)(2).[3]

### D. Advanced Sick Leave Notice and Processing: November 26, 2001 -October 2002

The complainant's final claim involves the agency's alleged delay in obtaining approval for him to be a Leave Recipient under the Voluntary Leave Transfer Program and its provision of incorrect information about advanced sick leave. The undisputed evidence shows that the complainant submitted an Application to participate in the Voluntary Leave Transfer Program on January 24, 2002, and that it was approved and signed by the Commanding Officer, Naval Station, Pearl Harbor, on February 15, 2002. The Leave Transfer Announcement was issued on February 19, 2002. IF:224-228. The complainant had notice that this had occurred at leave by mid-March 2002, and acknowledges that the request was processed by April 2, 2002. IF:230-231; AJE:2, p.5.

The complainant further contends that the agency failed to

---

[2] The fact that the Department of Labor required submission of a different claim form, further delaying the process, is not attributable to the agency.

[3] Even if the claim were considered on the merits, the record contains no factual evidence from which a fact finder could infer that the agency's delay in submitting this claim was attributable to Mr. Kaopua's membership in any protected class. The complainant's accusations and speculation concerning the motives of agency officials are not sufficient to raise such an inference.

11

inform him about the correct advanced sick leave procedures, delaying this process for 30 days during February 2002.

As the above discussion indicates, the events about which the complainant complains occurred from three to six months before the complainant contacted an EEO Counselor on July 25, 2002. As such, this claim was not timely raised and must be dismissed. 29 CFR § 1614.107(a)(2).[4]

## V. CONCLUSION

I have carefully reviewed the entire record, including arguments and evidence not specifically addressed in this decision, in the light most favorable to the complainant. I conclude that the agency is entitled to judgment as a matter of law because the complainant has made an insufficient showing on essential elements of the case on which the complainant has the burden of proof. Celotex Corp. v. Catrett, supra. The agency's motion for summary judgment is GRANTED.

Jeanne M. L. Player
Administrative Judge

---

[4] This claim would be subject to summary disposition even if it were considered on the merits because the complainant has failed to show that the agency's action materially altered the terms, conditions, or privileges of his employment. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998). As the complainant could not establish that the agency took an adverse action against him, he could not establish a prima facie case of discrimination on any basis.

12

## NOTICE

This decision of the Administrative Judge is issued pursuant to 29 CFR §1614.109(g). EEOC regulations require the agency to take final action on the complaint by issuing a final order within 40 calendar days of receipt of this decision. The agency's final order shall notify the complainant whether or not the agency will fully implement this decision, and shall contain notice of the complainant's right to appeal to the Commission, the right to file a civil action in federal district court, the name of the proper defendant in any such lawsuit, and the applicable time limits for such appeal or lawsuit. **With the exception detailed in the next paragraph, complainant may not file an appeal to the Commission directly from this decision.** Rather, complainant may appeal to the Commission within 30 calendar days of receipt of the agency's final order concerning its implementation of this decision. If the final order does not fully implement this decision, the agency must also simultaneously file an appeal to the Commission in accordance with 29 CFR §1614.403, and append a copy of the appeal to the final order. A copy of EEOC Form 573 must be attached to the final order.

The complainant may only appeal directly from this decision if the agency has **not** issued its final order within 40 calendar days of its receipt of the hearing file and this decision. In this event, the complainant should append a copy of the Administrative Judge's decision to the appeal. The complainant should furnish a copy of the appeal to the opposing party at the same time it is filed with the Commission, and should certify to the Commission the date and method by which such service was made on the opposing party.

Appeals to the Commission must be filed by mail, personal delivery, or facsimile to the following address:

> Director
> Office of Federal Operations
> Equal Employment Opportunity Commission
> P.O. Box 19848
> Washington, D.C. 20036
> Fax No. (202)663-7022

Facsimile transmissions over 10 pages will not be accepted.

For further guidance regarding appeals, the parties may consult 29 CFR § 1614.401 et seq. and Chapter 10 of the

13

Commission's Management Directive-110. These documents are available on the EEOC's website at www.eeoc.gov.

### CERTIFICATE OF MAILING

I hereby certify that on the 26th day of February, 2004, I mailed a copy of my Decision to the complainant, the complainant's representative, and the agency's representative, as is indicated in the cover letter transmitting the Decision to the agency's designee.

*Jeanne M. L. Player*
Jeanne M. L. Player

14



## DEPARTMENT OF THE NAVY
HUMAN RESOURCES OFFICE
COMMANDER
NAVY REGION HAWAII
850 TICONDEROGA STREET
PEARL HARBOR, HAWAII 96860-5101

12713
Ser N01CP4/174
9 Mar 04

From: Complaints Program Manager
To: Office of EEO Complaints Management and Adjudication (OECMA)
(Code 015)

Subj: FORWARDING OF FILE FOR FINAL AGENCY DECISION FOR DISCRIMINATION COMPLAINT OF KAOPUA MILTON DON 03-612813-001

Ref: (a) 29 CFR 1614

Encl: (1) Complaint File
(2) Investigative File dtd 20 Aug 03
(2) Certificate of Service

1. Enclosures (1) through (3) are forwarded for a final agency decision in accordance with reference (a).

RAYNETTE ALGOSO

Copy to (w/o encls):
Elbridge Smith, Esq., Complainant's Representative
Milton K. Kaopua
COMNAVREG (N01CP2A)

Certificate of Service

I hereby certify that a copy of the letter Forwarding the Complaint Case file and Investigative file for MILTON K. KAOPUA, DON Docket No. 03-62813-001 were sent certified (or as annotated) on this date to the following:

Sent by FEDEX:
Naval Office of EEO Complaints Management & Adjudication
Office of Civilian Human Resources (Code 015)
615 Sicard Street SE Suite 100
Washington Navy Yard DC 20374-5072

Complainant's Representative:
Elbridge W. Smith, Esq.
841 Bishop Street, Suite 909
Honolulu, HI 96813

Milton K. Kaopua
84-710 Kili Drive, #1313
Waianae, HI 96792

Date: 10 May 04

_____
EEO Assistant



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
San Francisco District Office

901 Market Street, Suite 500
San Francisco, CA 94103
(415) 356-5100
TTY (415) 356-5098
FAX (415) 356-5126

February 26, 2004

Naval Office of EEO Complaints
   Management and Adjudication (NAVOECMA)
614 Sicard Street SE, Suite 100
Washington Navy Yard, D.C.  20374-5072

RE:  Milton Kaopua v. Secretary, Dept. of the Navy
     EEOC No. 370-2003-02350X
     Agency No. DON-03-62813-001

Dear Mr. Secretary:

   Enclosed is my Decision, with attachments, issued pursuant to 29 CFR § 1614.109(g) in the above-referenced case. By copy of this letter, I am providing the complainant, his attorney, and the agency's representative with a copy of my Decision.

   Please send me a copy of your final order for our records. You may contact me at 415-625-5641 if you have any questions.

Sincerely,

Jeanne M. L. Player
Administrative Judge

Enclosure

cc:  Milton Kaopua
     Edlbridge Smith
     Jacob Bradley