**SMITH HIMMELMANN**
Attorneys at Law • A Law Corporation
**ELBRIDGE W. SMITH** [HI 2079]
745 Fort Street, Suite 311
Honolulu, Hawaii 96813
Telephone No.: (808) 523-5050
Fax No.: (808) 538-1382
Email: shlaw@hawaii.rr.com

Attorney for Plaintiff Milton K. Kaopua

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA, | ) CIVIL NO. CV04 00723 JMS / KSC |
| | ) |
| Plaintiff, | ) PLAINTIFF'S MEMORANDUM IN |
| vs. | ) OPPOSITION TO DEFENDANTS' |
| | ) MOTION TO DISMISS, OR IN THE |
| FEDERAL FIRE DEPARTMENT; | ) ALTERNATIVE, FOR SUMMARY |
| DONALD C. WINTER, Secretary, | ) JUDGMENT FILED MARCH 15, 2006; |
| Department of the Navy, | ) CERTIFICATE OF SERVICE |
| | ) |
| Defendants. | ) Summary Judgment Hearing: |
| | ) Date: 07/18/06 |
| | ) Time: 10:00 a.m. |
| | ) Judge: J. Michael Seabright |
| | ) |
| | ) Trial Date: 10/17/06 |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS'
## MOTION TO DISMISS, OR IN THE ALTERNATIVE,
## FOR SUMMARY JUDGMENT FILED MARCH 15, 2006

TABLE OF CONTENTS

Page(s)

Table of Cases & Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii - iv

I.     SUMMARY OF PLAINTIFF'S POSITION . . . . . . . . . . . . . . . . . . . . . . . . 1

II.    RESPONSIVE STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . 4

III.   STANDARD OF REVIEW

       A.    Legal Standard for Rule 56 Federal Rules of Civil Procedure . . . . . . 10
       B.    Summary Judgment Not Warranted in Discrimination
             Cases Where There Are Genuine Issues of Material Fact . . . . . . . . . . 11
       C.    Standard of Review in Federal Employee EEOC Cases . . . . . . . . . . . 12

IV.    LEGAL ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

       A.    The Agency waived the 45 day time limit for initiating the
             administrative EEO process; Plaintiff has adduced
             sufficient evidence for this Court to find that he has made
             out a case under the continuing violation theory and
             therefore his EEO contact was timely; Plaintiff has
             adduced sufficient evidence for this Court to find that
             Plaintiff timely initiated the administrative EEO process
             upon learning that he was a victim of unlawful employment
             discrimination; this Court should find that any delay in
             timely initiating the administrative EEO process is subject
             to equitable tolling. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

             (1)    Plaintiff has alleged sufficient facts for this
                    Court  to find that the Agency waived the 45
                    day deadline . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

             (2)    Plaintiff has alleged sufficient facts for this
                    Court to find that discrimination at Plaintiff's
                    workplace constituted a "continuing
                    violation" for purposes of determining
                    whether Plaintiff complied with the 45 day
                    deadline for filing an administrative
                    complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

(3)    Plaintiff has alleged sufficient facts for this
Court to find that Plaintiff did not became
aware that unlawful discrimination was the
basis of the adverse actions and hostile
environment until July 2002 . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

(4)    Plaintiff has alleged sufficient facts for this
Court to find that the extremely short 45 day
deadline for filing an Agency administrative
complaint is subject to equitable tolling . . . . . . . . . . . . . . . . . 19

B.    Plaintiff has alleged sufficient facts for a jury to find that
Defendant subjected Plaintiff to a discriminatory hostile
work environment by and through its own actions and by
giving apparent approval to the unlawful actions of Mr.
Abad . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

C.    Plaintiff has alleged sufficient facts for a jury to find that
Defendant denied Plaintiff reasonable accommodation for
his psychiatric/psychological disability . . . . . . . . . . . . . . . . . . . . . . . 26

V.    CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Note: Plaintiff's Responsive Concise Statement of Facts; Declarations of Plaintiff
Milton K. Kaopua and Elbridge W. Smith; Exhibits "A" - "R" are filed separately.

## TABLE OF AUTHORITIES

Page(s)

U.S. SUPREME COURT CASES

*Anderson v. Liberty Lobby*, 477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Burlington Northern v. White,* Docket No. 05-529, __ U.S. __ (June 22, 2006) . . . . . . 24
*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11
*EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257 (1991) . . . . . . . . . . . . . . . . . . . . . . 25
*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 . . . . . . . . . . . . . . . . 26
*Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991) . . . . . . . . . . . . . . . . 11
*Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) . . . . . . . . . . . . . . . . 15, 21
*O'Connor v. Consolidated Coin Caterer's Corp.*, 517 U.S. 308(1996) . . . . . . . . . . . . 11
*Oncale v. Sundowner Offshore Services*, 523 U.S.75 (1998) . . . . . . . . . . . . . . . . . . . 25
*Pullman-Standard v. Swint*, 456 U.S. 273 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
*Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982) . . . . . . . . . . . . . . . . . . . . . . 21

9TH CIRCUIT COURT OF APPEAL CASES

*Barnett v. U.S. Air, Inc.*, 228 F.3d 1105 (9th Cir. 2000)(en banc),
    *vacated on other grounds,* 535 U.S. 391 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*Boyd v. United States Postal Serv.*, 752 F.2d 410 (9th Cir. 1985)
*Charles v. Garrett*, 12 F.3d 870 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
*Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . 26
*Fraser v. Goodale*, 342 F.3d 1032 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
*Girard v. Rubin*, 62 F. 3d 1244 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
*Gregory v. Widnall*, 153 F.3d 1071(9th Cir.1988)
*Humphrey v. Mem'l Hosp. Ass'n,* 239 F.3d 1128 (9th Cir. 2001) . . . . . . . . . . . . . . . . 29
*Leorna v. United States Dep't of State*, 105 F.3d 548 (9th Cir. 1997) . . . . . . . . . . . . . 21
*Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . 21
*Sischo-Nownejad v. Merced Com. College District*, 934 F.2d 1104 (9th Cir. 1991) . . . 12
*Zivkovic v. So. Cal. Edison Co.*, 302 F.3d 1080 (9th Cir. 2002) . . . . . . . . . . . . . . . 28, 29

OTHER CIRCUIT COURTS OF APPEAL'S CASES

*Gardner v. Morris,* 752 F.2d 1271 (8th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
*Jakubiak v. Perry, DoD*, 101 F.3d 23 (4th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Lawson v. State of Washington, et al.,Pet.*, 296 F.3d 799, (9th Cir. 2003) . . . . . . . . . . . 17
*Nereida-Gonzales v. Tirado-Delgado,* 990 F. 2d 701 (1st Cir. 1993) . . . . . . . . . . . . . . 10
*Oliver v. Digital Equipment Corporation*, 846 F.2d. 103 (1st Cir. 1988) . . . . . . . . . . . .10
*Prewitt v. United States Postal Service*, 662 F.2d 292 (5th Cir. 1981) . . . . . . . . . . . . . 27

FEDERAL ADMINISTRATIVE CASES

*Bond v. Dept. of the Navy,* EEOC No. 01997029 (2001) ............................................... 14
*Cobb v. Dept of the Treasury,* EEOC Request No. 05970077 (1997) ...................... 15, 18
*Davis v. Dept. of the Treasury,* EEOC No. 011045(2002) ............................................. 21
*Faulkner v. Dept. of Defense,* EEOC No. 01A31902, (2004) ........................................ 15
*James v. Dept. of Homeland Security,* EEOC No. 01A31292 (2004) ........................... 14
*Marriott v. Postmaster General,* EEOC No. 01994803 (2001) ..................................... 27
*Nelson v. Postmaster General,* EEOC No. 01981981 (2001) ......................................... 27
*Omar v. USPS,* EEOC Request No. 05920207 (1992) .................................................... 27
*Rivers v. Dept. of Navy,* EEOC Appeal No. 03920152 (1993) ....................................... 27
*Ruiz v. USPS,* EEOC Request No. 05880859 (1990) ...................................................... 28
*Shipp v. USPS,* EEOC Appeal No. 01912739 (1991) ...................................................... 27
*Southerland v. Postmaster General,* EEOC No. 05930714 (1994) ................................ 27
*Steele v. General Services Administration,* EEOC No. 01933171 (1994) ...................... 21

FEDERAL STATUTES AND REGULATIONS:

Americans with Disabilities Act .................................................................... 26
The Civil Rights Act of 1964 ......................................................................... 12
Title VII ............................................................................... 13, 14, 25
Rehabilitation Act of 1973 ............................................... 13, 14, 26, 27
42 U.S.C.§ 2000e-16(c) ............................................................................... 12
42 U.S.C.§ 12102(2) ................................................................................... 27
29 U.S.C. 791 ............................................................................................ 26
29 C.F.R § 1614.105(a)(1) ........................................................................... 13
29 C.F.R § 1614.107(a)(2) ........................................................................... 14
29 C.F.R.§ 1614.109(g) .................................................................................. 7
29 C.F.R.§ 1614.302 .................................................................................. 26
29 C.F.R. § 1614.604(c) ............................................................................... 20

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA, | ) CIVIL NO. CV04 00723 JMS / KSC |
| | ) |
| Plaintiff, | ) PLAINTIFF'S MEMORANDUM IN |
| vs. | ) OPPOSITION TO DEFENDANTS' |
| | ) MOTION TO DISMISS, OR IN THE |
| FEDERAL FIRE DEPARTMENT; | ) ALTERNATIVE, FOR SUMMARY |
| DONALD C. WINTER, Secretary, | ) JUDGMENT FILED MARCH 15, 2006 |
| Department of the Navy, | ) |
| | ) |
| Defendants. | ) |

H:\CLIENTS\Kaopua\Plead - USDC\07-03-06 Plaintiff's Opp Memo to Def Mtn for SJ.wpd

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT FILED MARCH 15, 2006

COMES NOW, Plaintiff Milton K. Kaopua (hereinafter "Plaintiff"), by and through his attorney of record, Elbridge W. Smith, of SMITH HIMMELMAN, AAL, ALC and submits Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, filed on March 15, 2006. Defendants Federal Fire Department and Donald C. Winter, Secretary of the Navy (herein after "Agency" or Navy"), motion to dismiss[1] and or for summary judgement. For the reason set forth herein, Defendant's motion should be denied.

## I.    SUMMARY OF PLAINTIFF'S POSITION

As set forth *infra*, Plaintiff identifies genuinely disputed material facts, shows that he timely filed his administrative complaint, and has made out a prima facie case

---

[1]    As matters outside of the pleadings have been provided by both parties to the Court in determination of this Motion, the Agency's motion to dismiss under Rule 12(b)(6) Fed. Rules of Civil Procedure is treated as a motion for summary judgment under Rule 12(c) Fed. Rules of Civil Procedure and disposed of as provided in Rule 56, Fed. Rules of Civil Procedure.

of unlawful employment discrimination on the bases of race/national origin, harassment, and failure to accommodate his psychiatric/psychological disability.

Plaintiff, a self-identified native Hawaiian, was treated less favorably by his Portugese-Filipino supervisor Assistant Chief Glenn DeLaura who favored Plaintiff's co-worker, Robert Abad, also a Filipino.

As a direct result of the Agency's abject refusal to act in accordance with its own Zero Tolerance of Workplace Violence Policy, Plaintiff developed a psychiatric/psychological disability upon learning from the Base Police that Mr. Abad threatened to shoot him and that Mr. Abad surrendered an unlawfully possessed firearm when served with Plaintiff's Temporary Restraining Order to avoid Plaintiff.

The Agency refused to timely process and hindered Plaintiff's attempts to timely process his Workers Compensation claim for traumatic injury payment which was eventually ordered by the U.S. Department of Labor. The Agency refused to even respond to Plaintiff's requests and the requests of his psychiatrist and psychologist that the Agency accommodate him by assuring him that he could return to a safe work place free from interaction with and threats from Mr. Abad.

As set forth herein, the evidence clearly establishes that the Agency is not entitled to summary judgment because:

A    The Agency waived the 45 day time limit for initiating the administrative EEO process; Plaintiff has adduced sufficient evidence for this Court to find that he has made out a case under the continuing violation theory and therefore his EEO contact was timely; Plaintiff has adduced sufficient evidence for this Court to find that Plaintiff timely initiated the administrative EEO process upon first learning that he was a victim of unlawful employment discrimination; this Court should find that any delay in timely initiating the administrative EEO process is subject to equitable tolling.

(1)  Plaintiff has alleged sufficient facts for this Court to find that the Agency waived the 45 day deadline.

(2)  Plaintiff has alleged sufficient facts for this Court to find that harassment at Plaintiff's workplace constituted a continuing violation for purposes of determining whether Plaintiff complied with the 45 day deadline for filing an administrative complaint.

(3)  Plaintiff has alleged sufficient facts for this Court to find that he did not became aware that unlawful discrimination was the basis of the adverse actions and hostile environment at the Fire Station until July 2002.

(4)  Plaintiff has alleged sufficient facts for this Court to find that the 45 day deadline for filing an administrative complaint in this case is subject to equitable tolling.

B.  Plaintiff has alleged sufficient facts for a jury to find that Defendant subjected Plaintiff to a discriminatory hostile work environment through its own actions and by giving apparent approval to the unlawful actions of Mr. Abad.

C.  Plaintiff has alleged sufficient facts for a jury to find that Defendant denied him reasonable accommodation for his psychiatric/psychological disability.

Specifically, Plaintiff alleges sufficient facts herein for a jury to find that the Agency subjected Plaintiff to a hostile work environment and disparate treatment from November 1998 until his retirement in April 2004. The culminating example of Defendant's adverse and callous treatment of Plaintiff occurred after the death threat on Plaintiff's life by Capt. Robert Abad, when Plaintiff's and Abad's supervisors took no immediate action to enforce the Agency's written policy of Zero Tolerance of Workplace Violence.

The Agency has not, and can not, identify any "business reason" for its hostile indifference to the rights and safety of Plaintiff, including:

♦ After the threat to shoot Plaintiff, the Agency's ignoring Plaintiff's request for accommodation for his psychiatric/psychological disability;

♦ Assistant Chief DeLaura's support and testimony favorable to his close friend Mr. Abad at his Federal and State criminal proceedings;

3

♦ the Fire Department's claimed "losing" of Plaintiff's workers compensation application file, then misprocessing his workers compensation claim, and substantially delaying his receipt of workers' compensation benefits for approximately four months when Plaintiff had no income from his employment;

♦ the Agency's refusal to properly advise and provide Leave Transfer benefits to Plaintiff and specifically misinforming another employee that Plaintiff had no such rights and benefit eligibility.

Finally, Plaintiff's evidence shows that he was unaware that he had an EEO claim for this harassment and loss of pay and benefits, including the timing in which he was to contact an EEO counselor, until July 2002. Thus, Plaintiff's contact with his EEO Counselor on July 25, was timely.

The evidence presented by Plaintiff is sufficient for this Court to deny Defendant's motions in this matter and to entitle Plaintiff to a trial on the merits.

## II.    RESPONSIVE STATEMENT OF FACTS

As was well known to Plaintiff's co-workers and supervisors, Plaintiff is of Hawaiian ancestry, was raised in Hawaiian culture and tradition, has the classic Hawaiian coloring and physical features and proudly considers himself Hawaiian, as do his co-workers, friends and "ohana". (See Declaration of Milton K. Kaopua [2]; Plaintiff's Concise Statement of Facts (PSF #1, 2).[3]  While employed with the Federal Fire Department, Plaintiff worked with Fire Captain Robert F. Abad and Assistant

---

[2]    "Declaration" refers to the June 28, 2006 Declaration of Milton K Kaopua, attached to this opposition memorandum unless otherwise noted. All material facts are presented with relevant evidentiary support in Plaintiff's Responsive Statement of Concise Facts and Plaintiff's Exhibits are attached to the Declarations of Milton K. Kaopua and Elbridge W. Smith.

[3]    "PSF" refers to Plaintiff's Concise Statement of Facts, filed concurrently with Plaintiff's opposition memorandum to Defendants' present Motion. "DSF" refers herein to facts stated in Defendants' Statement of Concise Facts, filed concurrently with Defendants' present Motion.

Chief Glenn DeLaura, who are Filipino and Portugese-Filipino, respectively. Both Captain Abad and Assistant Chief DeLaura never represented themselves to be Hawaiian or part-Hawaiian. Mr. Abad and Mr. DeLaura are long-time close friends.[4] (PSF #3, 7, 18). In 2001, Plaintiff was employed as a Supervisory Firefighter (Fire Captain) and assigned to the Naval Station Pearl Harbor Fire Station # 11 on Shift A. There are two shifts for firefighters at Station 11 and the Fire Captain on Shift B at that station was Captain Abad. (DSF #1,2; PSF #4).

Conflict between Plaintiff and fellow employee Abad really started to develop in 1998 when Mr. Abad's continuing non-compliance with the Navy and Fire Department rules and regulations was ignored, if not abetted, by Mr. Adad's supervisors, despite complaints by Plaintiff. These activities included, *inter alia*, raising pigs, fish and escargot on government property, during official time, and taking and using government property, (including the Fire Department's ice machine) for Mr. Abad's personal use. (PSF #10, 11; Pl. Exh. "A" pp. 66-67; *see also* Defendant's Memo pg. 3 para. 2, citing Def. Exh 3, pp. 66-67 [5] ).

The conflict between Plaintiff and Captain Abad reached a volatile point on October 10, 2001 when Captain Abad filed a spurious "breaking and entering" Police complaint against Plaintiff regarding the government ice machine. Captain Abad accused Plaintiff of cutting off his (Abad's) personal lock on a government owned ice machine kept at the fire station, which Mr. Abad used for his personal, non-governmental, benefit. [PSF#12; Pl. Exh "A" ; Def. Exh. 2, 3].

---

[4] As is discussed, *infra.*, Assistant Chief DeLaura testified in this U.S. District Court on behalf of Captain Abad against Plaintiff re: terroristic threatening of Plaintiff; and was ready to testify against Plaintiff obtaining TRO's in State Court, during a time when Plaintiff needed legal and physical protection and safety from Captain Abad.

[5] "Defendants' Memo" refers to the Defendants' Memorandum in Support Of Defendant's Motion to Dismiss or in the Alternative, Motion for Summary Judgment, filed March 15, 2006.

When questioned by police, Captain Abad admitted that he did not see who had cut the lock off and then told officer Colin Hallberg that he was "tired of Mr. Kaopua" and **"I guess I'll just have to shoot him."** When the Police Officer Hallberg warned him about making threats, Mr. Abad showed no contrition for his remarks but instead affirmed his threat and stated **"Well, that's what it's coming to."** [Emphasis supplied] [PSF # 13, 15; Def. Exh. 2]. Plaintiff was not informed about Captain Abad's threatening statements until he later learned of it generally on October 13, 2001, from Police Officer Hallberg at the Security office; nor did he learn about the shooting threat itself until 13 days later on October 23, 2001, again from Officer Hallberg [PSF ##14-15].[6]

Plaintiff was appalled and extremely discomfited (physically and emotionally) that the Agency's managers were as completely unconcerned about Captain Abad's violent threat against his life, just as they had been concerning Captain Abad's numerous illegal activities. Alarmed by the Agency's inaction (and apparent condoning of Captain Abad's death threat), Plaintiff filed a civilian police report and then secured a State of Hawaii Court temporary restraining order ("TRO") against Captain Abad on December 13, 2001. (PSF #16-17; Pl. Exh. "H"]. Plaintiff was most distressed to learn that, when served with the TRO by the police, Captain Abad surrendered a unregistered firearm to them. (PSF #19; Pl Exhibit "A" and Def. Exh. 3, pg. 60, para. 6].

Plaintiff, on October 27, 2001, asked Acting Fire Chief Kaauwai for "traumatic injury ("T/I")[OWCP] leave and [am] going to my doctor for treatment." Plaintiff also reported his condition to Fire Chief Jones and Assistant Chief Kaea on October 25,

---

[6]   The EEOC Administrative Judge erroneously stated that Plaintiff had generally learned of the shooting threat specifically from his immediate supervisor, Mr. DeLaura, during a conversation with him on October 17, 2001. (Def. Exh. 31, AJ Decision at 7).

2001. Assistant Chief DeLaura specifically denied Plaintiff's request to be placed on the Office of Workers Compensation Program ("OWCP") leave and also said he must use sick leave instead. (PSF #14; Pl Exh "A", pg 62, para 14, pgs 69-70, para 41;). This resulted in Plaintiff's claim for OWCP leave not being filed and a long delay in Plaintiff receiving any payment. (PSF #15).    Assistant Chief DeLaura's initially claimed Plaintiff filed his OWCP report late but afterwards admitted it was dated and left at his work station on November 26, 2001. Assistant Chief DeLaura also claimed to have "signed it and controverted it" but no such controversion copy is in the record and none was attached to the Agency's Summary Judgment pursuant to 29 CFR § 1614.109(g), filed with the EEOC during proceedings below (*but see*, Pl. Exh. "E", pg. 98, para. 30; Pl. Exh."A", pg. 69-70, para. 41.b.). Assistant Chief DeLaura's statement about completing the form is a total fabrication which demonstrates his complete disregard for the rights of Plaintiff in "handling" his OWCP claim and complete disregard for Plaintiff's health and ability to support his family.

After Agency managers learned of the TRO, they took NO corrective action against Captain Abad, instead announcing on October 25, 2001 that a mandatory rotation policy would immediately be instituted and that Plaintiff would be the first to go and that Plaintiff would be transferred miles away from the fire station near his home where he had successfully worked for years with his same crew. (PSF #17). To make it not look like the reprisal it was Captain Abad was moved too, but only a short distance away to a small station closer to his friend and supervisor Mr. DeLaura. (Pl.Exh "A", pg 62-63, para 17). Plaintiff was humiliated in front of his men and station by this action; it appeared that he was being punished as if **he** had committed a wrongful act, instead of Captain Abad, and now, in retaliation for complaining of Captain Abad threats on his life, **he** was being harassed by being moved to a distant and inconvenient Fire Station, as everyone knew. (*Id.*;PSF#10,17).

7

Neither Assistant Fire Chief DeLaura nor Fire Chief Jones acted as if Captain Abad's threat "to shoot" Plaintiff was serious, despite the fact that they were both supervisors and were responsible for enforcement of the Agency's Zero Tolerance policy regarding workplace threats. (PSF #16)#13;Exh."?"]. Both knew that, due to the gravity of the threat, the Navy Investigative Service (NIS) had accepted the case for criminal investigation. (DSF #8; Pl Exh "A", pg 67, para 31.b; Pl Exh "B"; Pl Exh."E", pg. 98, para. 29(b)). Assistant Chief DeLaura testified on behalf of his friend, Captain Abad, at Captain Abad's criminal trial in Federal Court on October 16, 2002. He also appeared several times in State criminal court ready to testify on Captain Abad's behalf when Captain Abad was being charged with further criminal violations of the TRO-Injunction requiring him to stay away from Plaintiff Kaopua (PSF#18).

At his Federal court trial for of terroristic threatening, both Mr. Abad and the Federal Fire Department were chastised by Federal Magistrate Judge Kevin Chang when he noted, on the record, "It also appears to the Court ... that the threat or the statement was a violation of the work place violence policy which is set out in Government's Exhibit 1." *United States of America v. Robert F. Abad,* Criminal Case No. 02-309, USDC-Hawaii, Partial Transcript of Trial, pgs. 4-5; Pl. Exh. "C". That Workplace Violence Policy Statement is attached to Declaration of Milton K. Kaopua, Pl. Exh. "D". Only much later did Assistant Fire Chief DeLaura acknowledge that Mr. Abad was barely disciplined (a reprimand) because he "did use inappropriate language and was viewed as a third party threat." (Pl Exh "E", pgs 93-94, para. 14).

Because Captain Abad again violated the State Court's TRO-Injunction, the Honolulu Prosecuting Attorney accepted this matter for a second criminal prosecution. (PSF #19; Pl. Exh. "G", Prosecutor's September 23, 2003, letter to Mr. Kaopua). And the Fire Department issued a 3-day suspension against Mr. Abad for violating its "keep away" order to Abad. (Def Exh 20).

8

As a consequence of Captain Abad's original threat and the Agency's utter failure to provide actual or perceptible assurances of safety to Mr. Kaopua so he could return to work. Plaintiff was compensated for lost pay for many months and was medically treated under the OWCP. (Declaration of Milton Kaopua, para 33).

Plaintiff, his counsel, his physician and the OWCP Registered Nurse overseeing his OWCP claim repeatedly requested that the Agency agree to provide, and then to actually provide, Plaintiff with a safe and appropriate workplace to no avail. (PSF #24-28). Indeed, Fire Chief Jones and former Deputy Chief Kaea's testimony "that Capt. Abad did not threaten complainant" would be risible, were the testimony not so shocking.

Plaintiff was first diagnosed in October 2001 with a condition of Adjustment Disorder with Mixed Anxiety and Depressed Mood [Diagnostic and Statistical Manual IV ("DSM-IV") 309.28] acute and severe, with many Post-Traumatic Stress Disorder (PTSD) symptoms. His condition remained dysfunctional well into late 2002 according to his doctors and the OWCP medical coverage continued. (Pl Exhibits P & Q].

Plaintiff had both a mental impairment and had a record of such an impairment which substantially limited one or more major life activities (*see also* Pl. Exh. "A" & "F"), that endured more than two years and under which he could not work at all for approximately a year, returning to limited duty work in and around November, 2002, after the agency provided some assurances of safety to him and his doctors. He remained under weekly workers compensation medical care until his retirement in April 2004 . (Declaration of Milton Kaopua, para 33).

The essence of Plaintiff's discrimination harassment complaint is that every time the Agency had an opportunity to take an action concerning Plaintiff, the Agency either took an adverse action against Plaintiff or acted in a manner that was adverse to Plaintiff's interests due to his race and/or disability.

9

## III.    STANDARD OF REVIEW

### A.    Legal Standard for Rule 56 Federal Rules of Civil Procedure

The Federal Rule of Civil Procedures, Rule 56 provides that summary judgment "shall be rendered forth with pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." An issue of fact is "genuine" if the evidence is such that a reasonable fact finder could find in favor of the non-moving party. *Celotex v. Catrett*, 477 U.S. 317, 322-323 (1986); *Oliver v. Digital Equipment Corporation*, 846 F.2d. 103, 105 (1st Cir. 1988).

A fact is "material" if it has the potential to affect the outcome of a case. *See, Nereida-Gonzales v. Tirado-Delgado*, 990 F. 2d 701, 703 (1st Cir. 1993). If more than one inference can be drawn from the facts, then summary judgment is inappropriate. Stated differently, in ruling on a motion for summary judgment, the Judge is constrained to determine only whether there exist genuine disputes of material fact, not whether the alleged facts are true or untrue.

The entry of summary judgment is only mandated against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex, supra,*  at 322. The court, however, must draw all justifiable inferences in favor of the

nonmoving party. *Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991);

*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). Federal Rule 56(e) requires that

an affidavit in support of summary judgment be based on personal knowledge and that

the evidence be admissible

In *Celotex*, the Supreme Court noted that the initial burden is on the moving

party to identify those portions of the record that demonstrate the absence of a genuine

issue of material fact. As set forth *infra*, the Agency has not shouldered this burden of

proof and, so, the Agency's Motion should be denied.

B.    Summary Judgment Not Warranted in Discrimination Cases Where There
      <u>Are Genuine Issues of Material Fact</u>

A summary judgment decision is only appropriate in a discrimination case when

the <u>undisputed facts</u> show that (1) the Plaintiff-Complainant fails to establish a *prima*

*facie* case of discrimination, or 2) the employing agency fails to articulate a legitimate

non-discriminatory reason for its actions or, 3) the Plaintiff fails to establish that the

agency's stated reason was a pretext for discrimination. *Celotex, supra.* Plaintiff need

only to present evidence which, if unrebutted, would support "an inference" that the

agency's actions resulted from discrimination. *See, O'Connor v. Consolidated Coin*

*Caterer's Corp.*, 517 U.S. 308(1996).

In a case involving unlawful employment discrimination a Plaintiff bears the

burden of establishing that the agency intentionally discriminated against him. As a

general matter, issues of intent or motivation are particularly inappropriate for summary

judgment. The existence of discriminatory intent is, in the words of the U.S. Supreme

Court, "a pure question of fact." *Pullman-Standard v. Swint*, 456 U.S. 273, 287-88

(1982). It is well established in the law that summary judgment is often not warranted in discrimination cases:

> We require very little evidence to survive summary judgment precisely because the ultimate question is one that can only be resolved through a "searching inquiry" - one that is most appropriately conducted by the fact finder, upon a full record. [*Sischo-Nownejad v. Merced Community College District*, 934 F.2d 1104,1111 (9th Cir. 1991)]

As discussed *infra,* there are significant material facts that are in genuine dispute which warrant a denial of summary judgment in this discrimination case.

C.  Standard of Review in Federal Employee EEOC Cases

The Civil Rights Act of 1964, provides federal employees with the same right to *de novo* trial that private employees possess. When an agency issues a notice of final action to a federal employee alleging employment discrimination, the claimant may seek *de novo* review of the disposition of his administrative complaint by filing a civil action in district court within 90 days. 42 U.S.C. § 2000e-16(c); *Charles v. Garrett*, 12 F.3d 870, 873-74 (9th Cir. 1993)[based on pre 1991 version of § 2000e-16(c), which provided only 30 days within which to file a civil action].


IV.  **LEGAL ANALYSIS**

A.  The Agency waived the 45 day time limit for initiating the administrative EEO process; Plaintiff has adduced sufficient evidence for this Court to find that he has made out a case under the continuing violation theory and therefore his EEO contact was timely; Plaintiff has adduced sufficient evidence for this Court to find that Plaintiff timely initiated the administrative EEO process upon learning that he was a victim of unlawful employment discrimination; this Court should find that any delay in timely initiating the administrative EEO process is subject to equitable tolling.

As explained *infra,* Plaintiff has adduced sufficient facts upon which this Court can find that he timely contacted an EEO counselor regarding his discrimination complaint in accordance with 29 CFR §1614.105(a)(1). First, Plaintiff contends that the Agency waived the 45 day deadline throughout the administrative processing of his complaint, never raising such defense. Second, this Court should find that Plaintiff has adduced evidence of a continuing violation of his rights under Title VII and Rehabilitation Act, such that his complaint is deemed to have been timely filed. Third, this Court should find, in the alternative, that Plaintiff has stated sufficient facts to show that he timely initiated EEO contact upon discerning that he was the victim of unlawful discrimination. Fourth, in the event this Court finds that Plaintiff failed to timely contact an EEO counselor, this Court should find that such delay is excused under the doctrine of equitable tolling.

(1)     Plaintiff has alleged sufficient facts for this Court  to find that the Agency waived the 45 day deadline.

In the instant case, the Agency never contested the timeliness of Plaintiff's contact with an EEO Counselor, with the EEO-OCI Investigator, nor with the EEOC Administrative Judge, although it had ample opportunity to do so. Specifically, the Agency accepted Plaintiff's October 3, 2002 formal complaint allegations on April 3, 2003 without comment as to the timeliness of his contact with an EEO Counselor. Plaintiff's complaint was subsequently investigated by the Agency and a Report of Investigation issued. Neither the EEO counselor nor any of the Agency witnesses interviewed by the investigator indicated in words or substance that Plaintiff failed to timely initiate contact with an EEO counselor.

On November 25, 2003, the Agency filed a Motion for Findings and Conclusions Without a Hearing before the EEOC administrative judge. (Def. Exh 31, AJ Decision,

13

pg. 1). In that motion, the Agency neither contended nor claimed that Plaintiff failed to timely initiate contact with an EEO counselor. The EEOC Administrative Judge, *sua sponte*, decided that Plaintiff failed to timely initiate contact with an EEO Counselor within the 45 day time limits as required by title 29 C.F.R. § 1614.107(a)(2). (Def. Exh. "31"[AJ Decision at 8]. [7] The Agency Final Order (Decision) issued on April 15, 2004, contains no reference whatsoever to untimeliness (Def. Exh 32).

When an agency does not object to the timeliness of contact with an EEOC Counselor at critical stages of a proceeding and fails to make any objection as to timeliness, including in its Final Agency Decision, the agency is deemed to have waived its right to do so. *Bond v. Department of the Navy,* EEOC No. 01997029, fn. 4 (2001); *Cf., James v. Department of Homeland Security*, EEOC No. 01A31292 (2004) [acceptance and investigation of complaint does not constitute waiver of time limits if agency addresses untimeliness in its FAD]; *Girard v. Rubin*, 62 F. 3d 1244 (9th Cir. 1995)[time limit for federal employee to raise discrimination claim with equal employment counselor is treated as a statute of limitations and is subject to waiver]. This Court should find that the Agency has waived the 45 day deadline to initiate timely contact.

    (2)    Plaintiff has alleged sufficient facts for this Court to find that discrimination at Plaintiff's workplace constituted a "continuing violation" for purposes of determining whether Plaintiff complied with <u>the 45 day deadline for filing an administrative complaint.</u>

The facts in this case clearly demonstrate that Plaintiff was exposed to a continuing violation of his rights under both Title VII and the Rehabilitation Act.

---

[7] Because the Agency never disputed the timeliness of Plaintiff's complaint, Plaintiff was never on notice that timeliness was an issue. As the AJ *sua sponte* ruled Plaintiff's claim was untimely, Plaintiff was not afforded the opportunity to be heard or respond on the matter.

Plaintiff is entitled to have this Court consider *all* of the harassing incidents, and thus, summary judgment is not appropriate to determine the issues of the existence of "continuing discrimination" in Plaintiff's place of employment. *Faulkner v. Department of Defense*, EEOC No. 01A31902, (2004), *citing Cobb v. Department of the Treasury*, EEOC Request No. 05970077(March 13, 1997). In *Faulkner*, the Commission found a continuing violation where complainant alleged eight instances involving: a proposed reassignment, the supervisor's embarrassing complainant in front of his subordinates, a lowered performance evaluation, denial of leave, letter of reprimand, a second lowered performance appraisal, and failure to accommodate by ignoring three requests for parking. These events covered a period from March 12, 2001 to June 26, 2002.

In the case at bar, the accepted issues cover a period from 1998 through October 2002, with the bulk of the Agency's actions and the gravamen of Plaintiff's complaint occurring during the period October 2001 through October 2002.[8] Specifically, Complainant lodged numerous complaints to his chain of command concerning Captain Abad's violation of Agency work rules by raising pigs, feeding feral pigs, raising fish and escargot on federal premises, and illegally locking a government-owned ice making machine with a personal lock and permitting non-government employees to take ice from the machine. (PSF #7). In October of 2001, Captain Abad threatened to shoot Plaintiff believing it was Plaintiff who had done so; he later surrendered an

---

[8] In *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), the Court found, in part, that an employee may not recover for discrete discriminatory or retaliatory acts that fall outside the limitation period for filing a charge, even if they are related to acts that occurred within the time period. *Id*. at 113. In *Anisman v. Department of the Treasury*, EEOC No. 01A40496 (2004), the Commission found the *Morgan* ruling regarding the timeliness of filing a charge of discrimination in the private sector to be applicable to the issue of whether EEO Counselor contact was timely in the federal sector.

unregistered firearm to the authorities, when served with a TRO initiated by Plaintiff. The Agency managers next refused to take this death threat seriously despite their Zero Tolerance Workplace Violence Policy Statement (PSF #16) and Plaintiff's absence from work and OWCP claim.

The Naval Investigative Service began investigating Captain Abad's threat in early 2002 and he was subsequently charged on July 15, 2002. Captain Abad continued to violate the TRO and his managers' orders to avoid Plaintiff. Plaintiff reported Captain Abad's August 25, 2002 violation of the TRO and Captain Abad was convicted in State Court of violating it and placed on 6 months probation. Eventually when Plaintiff refused to drop his EEO complaint, the Fire Department suspended Capt. Abad from pay and benefits for three days for continued violation of the "stay away" order. (Def. Exhs. 19, 20).

Because Plaintiff's managers did not take the threat against him seriously, did not provide him with a safe work place, and instead humiliated him in front of his peers, Plaintiff became anxious, depressed, and thought he was suffering a heart condition; he went to his physician and later sought treatment with a psychiatrist concerning the fears and anxiety he experienced. Both of these physicians medically recommended and directed that Plaintiff avoid the workplace until he could be assured that it was safe to return and that he would not encounter his antagonist in the workplace.

Throughout early to mid 2002, Plaintiff's doctors and attorney requested safety and other remedial measures be undertaken to assist Plaintiff's recovery and return to work, but they were ignored or rejected by Agency personnel. (Pl. Exhs N, P, & Q to Declaration of Elbridge W. Smith, para. 24-28).

Although his OWCP claim was eventually approved in April 2002, the Agency's inexplicable delay in processing the paperwork forward to OWCP caused Plaintiff to lose income and leave, which renders him aggrieved. In order to ease the financial strain caused by his absence from work, Plaintiff sought to participate in the Voluntary Leave Transfer Program.. Although the Agency approved this request, it was not implemented in a timely manner and implemented only after Plaintiff's attorney complained on multiple occasions.[Declaration of Elbridge W. Smith, ¶¶13-16; Def Exh 15]. This both caused Plaintiff to not receive leave donations he otherwise might have and to have delayed a specific donation that was refused by the Agency.

Plaintiff's numerous requests for appropriate corrective actions, for reasonable benefits and physical accommodations, discussed in detail herein and within the Agency ROI, directly stemmed from his workplace injury. When one looks at the totality of Plaintiff's allegations, it is manifest that the Agency's action/inactions are all interrelated and stem from a pattern of harassment against Plaintiff. To treat them in a fragmentary fashion, as was done in the EEOC proceeding below was improper, and apparently not the intent of the Agency which did not so treat them.

Fragmentation often results from a failure to distinguish between the claim the complainant is raising and the evidence (factual information) he is offering in support of that claim. *See*, EEOC Management Directive-110 (MD-110), Chapter 5, Section III, ¶(A)(1).[9]

When an agency identifies each piece of factual evidence (usually comprising a single incident) offered by the complainant as a separate and distinct legal claim, it ignores a complainant's real underlying claim of a pattern of ongoing discrimination.

---

[9] These EEOC administrative agency guidelines deserve substantial deference. *EEOC vs. Arabian Am. Oil Co.*, 499 U.S. 244, 257 1991); *Lawson v. State of Washington, et al.*, 296 F.3d 799, (9th Cir. 2002).

MD-110, Chapter 5, Section III, ¶ (A)(2). *See e.g., Cobb v. Department of the Treasury*, EEOC Request No. 05970077 (1997). This is precisely what occurred in this complaint at the EEOC administrative level.

Plaintiff respectfully urges this Court to find that Plaintiff has adduced sufficient evidence for this Court to find that he has made out a continuing discrimination violation claim for purposes of application of the 45 day EEO Counselor contact rule and that his July 2002 EEO counselor contact, being within 45 days of the ongoing incidents of harassment, renders the entire complaint timely.

    3)    Plaintiff has alleged sufficient facts for this Court to find that Plaintiff did not became aware that unlawful discrimination/harassment was the basis <u>of the adverse actions and hostile environment until July 2002.</u>

Plaintiff had been assigned to the same Lualualei Fire Station for many years. He was never previously involved in the EEO process and does not recall any specific EEO training concerning how and when to file. Plaintiff did not know any other person in the workplace who had filed an EEO complaint. He does not recall there was ever a posting at his place of work concerning how to file an EEO complaint, whom to contact, or the specific time limits for doing so (although there may well have been so). (PSF #21, 22; Pl. Exh. "F", para. 12, 13).

As the attached Declaration of Counsel and Plaintiff demonstrate, Plaintiff had no experience with the EEO process. He was at a loss to understand why the Agency refused to take his situation seriously, despite the written "Zero Tolerance" policy for workplace threats; why the Agency delayed in processing his OWCP claim; why the Agency failed to post the voluntary leave transfer sheets at his and all other Firehouses and Agency work locations; why the Agency insisted on transferring him away from his work station; why the Agency refused to respond to legitimate questions by Plaintiff, his representative, his OWCP Nurse, and his physicians; why the Agency

refused to take (or report having taken) any disciplinary action against his antagonist. At no time was there a smoking gun or remark that said "we are after you because you Hawaiians pick on the Filipinos" and no remark that said "you are too sick to work here."

It was only after Counsel, Plaintiff, and his medical personnel met in July of 2002 for their long meeting (*see* Declarations attached) that they came to the realizations (a) the Agency and its attorney had no intention of addressing any of Plaintiff's concerns, (b) no legitimate business reasons were being offered, and (c) thus he was therefore the likely victim of deliberate harassment and unlawful discrimination. *See* Section 4, *infra.*

This is not a case where an employee slept on his rights. Plaintiff diligently pursued non legal resolutions of his problems with the Agency only to be rebuffed, stalled and stonewalled time after time.[10] And after coming to a collective consensus that discrimination was the only plausible explanation, an explanation Plaintiff did not think of on his own, he promptly made an EEO complaint to the Counselor.

(4)    Plaintiff has alleged sufficient facts for this Court to find that the extremely short 45 day deadline for filing an Agency administrative complaint is subject to equitable tolling.

EEOC Regulation 29 C.F.R. § 1614.105(a)(1) requires that complaints of discrimination should be brought to the attention of the Equal Employment Opportunity Counselor within forty-five (45) days of the date of the matter alleged to be discriminatory or, in the case of a personnel action, within forty-five (45) days of

---

[10]    Under such circumstances, the Court should also find that the Agency has, by its own actions and inaction, waived the applicable time limit for initiating contact with an EEO counselor. To do otherwise would allow the Agency to profit from its own dilatory and unreasonable conduct.

the effective date of the action.  The 45-day time limit is subject to waiver, estoppel, and equitable tolling. 29 C.F.R. §  1614.604(a)(2). [11]

In this case, as discussed *supra*, the Agency never identified nor objected to Plaintiff's alleged untimely contact with an EEO counselor, did not address this issue in its Final Agency Decision and the issue was not presented by the Agency at the EEOC proceedings.  Therefore, the District Court should find that the Agency has waived its right to object to Plaintiff's claims on the basis of timeliness. At the very least, there are genuine issues of material fact as to whether the Agency waived its objection to the timeliness of Plaintiff's complaint.  In the alternative, the District Court should find that Plaintiff's alleged untimely contact with an EEO Counselor is subject to equitable tolling. Due to the genuine issues of facts relating to Plaintiff's notice and knowledge of EEO timing rules and knowledge regarding the fact that the adverse actions and conditions at work were due to discrimination, summary judgment should be denied.

Under certain circumstances, extension of the 45-day time limit is mandatory upon evidence of Plaintiff's lack of knowledge of the administrative time limits or lack of knowledge of discrimination for the adverse actions taken against him:

> The agency or the Commission shall extend the 45-day time limit in paragraph (a)(1) of this section when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them, that he or she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred ...or for other reasons considered sufficient by the agency or the Commission. [*Jakubiak v. Perry, DoD*, 101 F.3d 23 (4th Cir. 1996),  citing 29 CFR §1614.105(a)(2)].

---

[11] The EEO Counselor, too is expected to determine and adequately document if there are issues of timeliness.  MD-110, Chapter 2, Section III., ¶ 3.

Furthermore, EEOC Regulations provide that the agency or the Commission shall extend the time limits when the individual shows that he was not notified of the time limits and was not otherwise aware of them. *See, Davis v. Department of the Treasury*, EEOC No. 01A21045 (2002)[*inter alia*, the agency failed to provide any evidence that complainant possessed knowledge of EEO time limits].

The doctrines of equitable tolling and equitable estoppel may apply to the requirement that a claim of discrimination be filed with the agency within the applicable limitations period. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S.Ct. 1127, 71L.Ed.2d 234 (1982), *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 S.Ct. 2061, 2072, 153 L.Ed.2d 106 (2002).

The doctrine of equitable tolling "has been consistently applied to excuse a claimant's failure to comply with the time limitations where she had neither actual nor constructive notice of the filing period." *Leorna v. United States Dep't of State*, 105 F.3d 548, 551 (9th Cir. 1997), 105 F.3d at 551. It focuses on whether there was excusable delay by the plaintiff: "If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs." *Santa Maria v. Pac. Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000) (citations omitted); *see also, Boyd v. United States Postal Serv.*, 752 F.2d 410, 414 (9th Cir. 1985): "The time period for filing a complaint of discrimination begins to run when the facts that would support a charge of discrimination would have been apparent to a similarly situated person with a reasonably prudent regard for his rights." (citation omitted).

Plaintiff had been assigned to the Lualualei Fire Station since before 1998. He was never previously involved in the EEO process and does not recall any specific

21

EEO training. Plaintiff did not know any other person in the workplace who had filed an EEO complaint. He does not recall there was ever a posting at his place of work concerning how to file an EEO complaint, whom to contact, or the specific time limits for doing so. Thus, Plaintiff was not notified of the time limits for contacting an EEO Counselor and was not otherwise aware of them, and the time limit should be equitably tolled.

Plaintiff does know that old, torn, somewhat defaced and missing postings were all replaced in Spring 2003, but even the new posting had no clearly visible filing deadline notice/warning, just a very small type (maybe 6 point?) notice on one page of a 24-page Fire Department Bulletin Board posting which covers everything from Civilian Employee Assistance Program, Code of Ethics, FMLA, Whistleblowing, Safety and Health, etc. (*See* Declaration of Milton Kaopua dated August 20, 2004 attached as Pl. Exh. "F", Attachment 1, pg. 2, thereto, dated February 11, 2002,).

B.     Plaintiff has alleged sufficient facts for a jury to find that Defendant subjected Plaintiff to a discriminatory hostile work environment by and through its own actions and by giving apparent approval to the unlawful actions of Mr. Abad.

Stated most succinctly, the Agency subjected Plaintiff to a hostile environment by abandoning Plaintiff and refusing to enforce its own policy prohibiting workplace violence, refusing to correct the frequent and serious violations of workplace rules by Mr. Abad, unreasonably delaying Plaintiff's application for workers compensation benefits and refusing his doctors' request for an accommodation.

This Agency's refusal to take serious action against Mr. Abad left Plaintiff on his own to attempt to acquire a secure working environment by obtaining and enforcing a Temporary Restraining Order against Mr. Abad, filing an OWCP claim and hiring a lawyer. The Agency's only action to ameliorate the situation was to impose, with a

wink and a nod, a so-called "mandatory rotation policy" which favored Mr. Abad by relocating him closer to his friend and both parties' supervisor Assistant Chief DeLaura and discriminated against Plaintiff by requiring him to report to a fire station far removed from his home, his fire truck crew, and previous duty station.

One cannot dispute the seriousness with which the Naval Investigative Service, the U.S. Attorney's Office, the Honolulu Police Department, and the Hawaii State Courts treated Mr. Abad's initial threat to shoot Plaintiff (not to mention the two subsequent additional TRO violations). One cannot avoid the conclusion that the Agency subjected Plaintiff to a hostile work environment when it failed to act where its own policy required action.

When the police served Mr. Abad with the Temporary Restraining Order, he surrendered an unregistered firearm. Given the threat to shoot him and Mr. Abad's apparent ability to make good this threat via an unlawfully possessed firearm, Plaintiff's reaction to Mr. Abad's threats was eminently reasonable. Not until more than one year after the event, did the Agency issue Mr. Abad a letter of reprimand for making a death threat (Def. Exh. 18); such tardy and *de minimis* punishment for the most serious violation of the Agency's "Zero Tolerance" prohibiting workplace violence is risible.

Despite the court ordered TRO, on August 25, 2002 Mr. Abad approached Plaintiff and his wife off-duty. (Pl. Exh. "R"). On May 29, 2003, Mr. Abad again disobeyed his supervisors' instructions by making contact with Plaintiff at his work station during working hours, and received a 3 day suspension in August, 2003. (Def. Exh. 20). Mr. Abad's violations of the TRO (that resulted in a 3 day suspension) also resulted in his State Court criminal conviction. In that proceeding the Court admonished Mr. Abad to avoid Plaintiff and placed him on 6 months probation.

23

The agency's actions in tolerating Mr. Abad's repeated and severe misconduct and its deliberate mishandling of Plaintiff's workers compensation claim was retaliatory as well as severely affecting Plaintiff's ability to do his work. [12] As the U.S. Supreme Court most recently held, the standard needed to make out an actionable matter is not too high, for even

> " . . . a reassignment of duties can constitute retaliatory discrimination where both the former and present duties fall within the same job description. Almost every job category involves some duties that are less desirable than others. That is presumably why the EEOC has consistently recognized retaliatory work assignments as forbidden retaliation."
>
> [*Burlington Northern v. White,* Docket No. 05-529, U.S. Supreme Court at 12, __ U.S. __ (June 22, 2006)].

In the better view, a retaliatory environment is a hostile one as well, particularly where, as here, the retaliation had the effect of unreasonably interfering with Plaintiff's work performance and formed a part of a pattern of obnoxious conduct.

In *Burlington Northern v. White*, *supra*, at 13, the Supreme Court found that a suspension of 37 days, even though later remediated by payment of back pay, required the employee to live for 37 days without any income and that a jury could reasonably find such a circumstance to constitute a materially adverse circumstance. A four month period without income will wreak havoc on the average family's finances.

Here, the Agency offers no business reason for its contest of his claim and its months-long delay in processing the claim.

The *EEOC Policy Guidance* indicates that the following factors are pertinent to the inquiry in evaluating whether the conduct is severe and pervasive enough to create

---

[12]    Thus, Plaintiff had no income for a period of approximately four months.    OWCP approved his claim approximately two weeks after receiving it.

a discriminatory hostile work environment: (1) whether the conduct was verbal or physical, or both; (2) how frequently the conduct was repeated; (3) whether the conduct was hostile and patently offensive; (4) whether the alleged harasser was a co-worker or a supervisor; (5) whether others joined in perpetrating the harassment; and (6) whether the harassment was directed at more than one individual. *EEOC Policy Guidance,* p. 14.; *Steele v. General Services Administration*, EEOC No. 01933171 (1994).

These administrative agency guidelines deserve substantial deference in determining whether discrimination has occurred in violation of the law. *EEOC v. Arabian Am. Oil Co.*, 499 U.S. 244, 257(1991); *Lawson v. State of Washington, et al.,* 296 F.3d 799, (9th Cir. 2002).

Mr. Abad's and the Agency's actions created a hostile environment for Plaintiff. It was so hostile Plaintiff could not come to work for over 11 full months and for which OWCP awarded him workers compensation and medical expenses. While not *per se* evidence of discrimination, the fact that OWCP recognized the workplace origin of Plaintiff's psychiatric/psychological illness speaks volumes about the environment in which he worked.

Clearly, a reasonable person could find that Mr. Abad's opprobrious conduct unreasonably interfered with Plaintiff's work performance.

Obviously, this threat and Mr. Abad's subsequent conduct interfered with Plaintiff's work performance because he could not even report to work. Title VII forbids behavior so objectively offensive as to alter the conditions of the victim's employment. *Oncale v. Sundowner Offshore Services*, 523 U.S.75 (1998).

Viewing Plaintiff's evidence cumulatively, *Chuang v. Univ. of Cal. Davis*, 225 F.3d 1115, 1127 (9th Cir. 2000), and drawing all reasonable inferences in favor of Plaintiff, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986), the District Court should find that Plaintiff has articulated sufficient facts of hostile work environment and specific circumstantial evidence of pretext to survive summary judgment.

C.    Plaintiff has alleged sufficient facts for a jury to find that Defendant denied Plaintiff reasonable accommodation for his psychiatric/psychological disability.

As set forth, *supra*, at all times pertinent to his complaint, Plaintiff suffered from a psychiatric/psychological disability, viz. Adjustment Disorder with Mixed Anxiety and Depressed Mood [Diagnostic and Statistical Manual IV ("DSM-IV") 309.28] acute and severe, with many Post-Traumatic Stress Disorder (PTSD) symptoms (Pl. Exh "P" & "Q"). Title 42 U.S.C. § 12102(2) [13] defines disability as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." Major life activities include being able to go to work. *Fraser v. Goodale,* 342 F.3d 1032, 1038 (9th Cir. 2003), *cert denied*, 541 U.S. 937 (2004). There is no question that due to the emotional anxiety and distress caused by Captain Abad's death threat Plaintiff was not able to attend work at the Fire Station. [14] The fact

---

[13]    The 29 C.F.R. Part 1630 standards applicable to and arising from The Americans with Disabilities Act of 1990 are now also used to determine whether Section 501 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 791), has been violated in a complaint alleging nonaffirmative action employment discrimination under this part [29 C.F.R. 1614.302][applicable to Federal employers and employees].

[14]    Plaintiff also testified at the Agency's EEO investigation that his psychiatric conditions also interfered with his social and recreational pursuits and family duties: "I'm afraid to go fishing,

that Plaintiff was disabled under the law and unable to attend work is supported by Robert Dave's, Ph.D. medical reports and psychologist Dr. Ginandes' medical reports on Plaintiff's medical condition and treatment. (PSF#24-28; *See* Declaration Elbridge W. Smith and Plaintiff's Exhibits O, P, &Q).

By regulation, the federal government is charged with becoming "a model employer" of individuals with disabilities. 29 CFR § 1614.203(a). This goal was also expressed by Congress when it enacted the Rehabilitation Act. *Gardner v. Morris,* 752 F.2d 1271 (8th Cir. 1985); *Prewitt v. United States Postal Service*, 662 F.2d 292, 301-02 (5th Cir. 1981). There is no requirement that an employee use the phrase "reasonable accommodation" in making a request. *See, e.g., Marriott v. Postmaster General*, EEOC No. 01994803 (2001) [complainant deemed to have made request for accommodation by giving agency a letter from his doctor requesting alternate duties]; *Nelson v. Postmaster General*, EEOC No. 01981981 (2001) [letter from doctor stating that complainant's tardiness was due to asthma constituted a request for accommodation].

Plaintiff requested a reasonable accommodation when he requested that his antagonist be reassigned to another location.   Plaintiff through his psychiatrist, his psychologist, and through the OWCP's  Registered Nurse, repeatedly asked for assurances a safe and appropriate work place environment to which the Agency continually refused to respond. *See*(PSF #24-28) Declaration of Elbridge W. Smith, Exhibits 3, 4 and 5.

In *Southerland v. Postmaster General*, EEOC No. 05930714 (1994), the Commission found that if the complainant demonstrates there is a nexus between an

---

throw a net, or swim ....  I'm afraid to go on picnics with my family ....  I'm afraid to go to the Credit Union and to the stores, or even a movie...." [July 16, 2003 Affidavit of Plaintiff; Pl Exh A, pg 1;  Def. Exh 3, pg 1.]

employee's disability and attendance, then the burden shifts to the agency to demonstrate that accommodation would impose an undue hardship on the agency. Commission precedent has made it clear that in a case involving excessive absences from work, a complainant may prove that he or she is a "qualified disabled person"-- in spite of such absences -- by first showing that there is a sufficient nexus between the absences and the purported disability. *See Omar v. USPS*, EEOC Request No. 05920207 (1992); *Ruiz v. USPS*, EEOC Request No. 05880859 (1990); *Rivers v. Department of Navy*, EEOC Appeal No. 03920152 (1993); *Shipp v. USPS*, EEOC Appeal No. 01912739 (1991).  Here, Plaintiff's psychologist, psychiatrist and the Office of Workers Compensation Programs all determined that the only cause for Plaintiff's psychiatric/psychological disability was Mr. Abad's threat to his life.

Defendant Agency does not and cannot offer any alternative etiology.  The Agency offers no undue hardship defense.

The fact of when the Agency eventually accommodated Plaintiff goes to the quantum of damages owed Plaintiff, but does not vitiate Plaintiff's claim that the Agency refused to accommodate him for a period of between 8-11 months, during the period from November 27, 2001 until at least July 2002 and effectively until November 2002, when Plaintiff returned to light duty.  The evidence supports Plaintiff's claim of denial of reasonable accommodation is such that a reasonable jury could find in his favor on this issue.

Furthermore, once Plaintiff requested a reasonable accommodation the Agency had an obligation to engage in an interactive dialogue with him regarding his request. In determining whether a reasonable accommodation exists, the employer must engage in an interactive process with the employee if the employee requests an accommodation or the employer recognizes the need for an accommodation. *Zivkovic v. So. Cal. Edison*

28

*Co.*, 302 F.3d 1080, 1089 (9th Cir. 2002); *Humphrey v. Mem'l Hosp. Ass'n,* 239 F.3d 1128, 1137 (9th Cir. 2001); *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1111-12 (9th Cir. 2000) (en banc), *vacated on other grounds,* 535 U.S. 391 (2002). "The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process." *Humphrey*, 239 F.3d at 1137. An employer who fails to engage in such an interactive process in good faith may incur liability "if a reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir.2000).

By ultimately affording Plaintiff his requested accommodation after an inexcusable delay, the Agency cannot, as a matter of logic, show that accommodating Plaintiff earlier constituted an "undue hardship."

This Court is respectfully urged to conclude that there exists a genuinely disputed material fact as to whether the Agency engaged in the required interactive process when Plaintiff requested a reasonable accommodation for his psychiatric/psychological disability. The Court should find further that there exists a genuine disputed material fact whether Defendant could have accommodated Plaintiff when he originally requested it.

## V. CONCLUSION

This honorable Court is respectfully requested to find that, for the reasons stated supra, that the Agency waived the 45 deadline for Plaintiff to timely make contact with an EEO counselor; that upon discerning that he was the victim of unlawful discrimination Plaintiff acted promptly by contacting an EEO counselor; that in the alternative, Plaintiff adduced sufficient facts to establish a continuing violation and

29

therefore timely contacted an EEO counselor and that, otherwise, the deadline for contacting an EEO counselor should be equitably tolled in this case.

Plaintiff further requests this Court to find that he has adduced sufficient facts for a reasonable jury to conclude that he was a victim of unlawful employment discrimination on the basis of race/national origin (Hawaiian) and/or mental disability (Adjustment Disorder with Mixed Anxiety and Depressed Mood with PTSD features) when the Agency refused to take any serious action against Mr. Abad, refused to accommodate Plaintiff's disability by providing him with a safe and secure work environment, when it maliciously interfered with his application for workers compensation benefits and for leave transfer, forcing him to be without income for months, and when it maliciously transferred him in accordance with its bogus "mandatory rotation policy."

Plaintiff respectfully requests this Court to dismiss the Agency Motion for Dismissal, or in the A;ternative, Motion for Summary Judgment.


Dated: Honolulu, Hawaii, July 3, 2006



Elbridge W. Smith
Attorney for Plaintiff Milton K. Kaopua

30

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

MILTON K. KAOPUA,                    ) CIVIL NO. CV04 00723 JMS / KSC
                    Plaintiff,       )
            vs.                      ) CERTIFICATE OF SERVICE
FEDERAL FIRE DEPARTMENT;             )
DONALD C. WINTER, Secretary,         )
Department of the Navy,              )
                    Defendants.      )
_____     )

## CERTIFICATE OF SERVICE

            I HERE BY CERTIFY that, on the date and by the method of service
noted below, a true and correct copy of the foregoing was served upon the
following at their last known address:
            Served Electronically through CM/ECF:

            Edward H. Kubo, Jr., United States Attorney, District of Hawaii
            R. Michael Burke, Assistant U.S. Attorney
            Room 6-100, PJKK Federal Bldg., Honolulu, Hawaii 96850

            e-mail: Mike.Burke@usdoj.gov

            Dated: Honolulu, Hawaii July 03, 2006.


                                    Elbridge W. Smith
                                    Attorney for Plaintiff