**SMITH HIMMELMANN**
Attorneys at Law • A Law Corporation
**ELBRIDGE W. SMITH** [HI 2079]
745 Fort Street, Suite 311
Honolulu, Hawaii 96813
Telephone No.: (808) 523-5050
Fax No.: (808) 538-1382
Email: shlaw@hawaii.rr.com
Attorney for Plaintiff Milton K. Kaopua

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 0 4 2006

at 2 o'clock and 21 min. A M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA,<br>  Plaintiff,<br>vs.<br>FEDERAL FIRE DEPARTMENT;<br>DONALD C. WINTER, Secretary,<br>Department of the Navy,<br>  Defendants. | ) CIVIL NO. CV04 00723 JMS / KSC<br>)<br>) Plaintiff's Responsive Concise<br>) Statement of Facts; Declaration of<br>) Milton K. Kaopua; Exhibits "A"-"G"<br>) Declaration of Elbridge W. Smith;<br>) Exhibits "H"-"R"; Certificate of Service |

H:\CLIENTS\Kaopua\Plead - USDC\07-03-06 P's Concise Statement of Facts & Exhibits.wpd

**PLAINTIFF'S RESPONSIVE CONCISE STATEMENT OF FACTS**

COMES NOW, Plaintiff Milton K. Kaopua (hereinafter "Plaintiff"), pursuant to Local Rule 56.1 of the United States District Court for the District of Hawaii, and hereby submits Plaintiff's separate and concise statement of material facts in support of Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss or in the Alternative for Summary judgment, filed contemporaneously with this statement.

| **Defendants' Facts** | **Evidentiary Support** |
|---|---|
| 1. Accepted: Defendants' Facts 1-5, 7-10, 12-26 | As stated in Def. Memo[1] |

---

[1] "Def. Memo" refers to Defendant's Motion to Dismiss, or in the Alternative, for Summary Judgment filed March 15, 2006. "Def. Exh." refers to Defendants' Exhibits attached to said Motion, and "Pl. Exh." refers to the Exhibits certified to and attached to the Declarations of Milton K. Kaopua ("Plaintiff's Decl.") and Elbridge W. Smith, ("Decl. of Smith"), respectively.

| | |
|---|---|
| 2. Controverted: Defendants' Fact 6. Plaintiff was not told on October 13, 2001 that Captain Abad wanted to shoot him. He was only told generally that Captain Abad had made a threat against him. On October 23rd a Police Officer told Plaintiff that Captain Abad threatened to shoot Plaintiff. | Plaintiff's Decl., ¶¶ 14-15. |
| 3. Controverted. Defendants Fact 11. Captain Abad would be transferred <u>effective 02 Dec. 01</u>. Six weeks after the death threat, not November 13, 2001. | Def. Exh. "8". |

| **Plaintiff's Responsive Facts** | **Evidentiary Support** |
|---|---|
| 1. Plaintiff is of Hawaiian ancestry, was raised in Hawaiian culture and tradition, and considers himself Hawaiian, as do his co-workers, friends and "ohana". | Plaintiff's Decl., ¶ 2. |
| 2. Plaintiff's Hawaiian ancestry was well known to Plaintiff's co-workers and supervisors due to disclosures made by Plaintiff to them over the years, since at least 1998. | Plaintiff's Decl., ¶ 3. |
| 3. While employed with the Federal Fire Department one of Plaintiff's superiors was Assistant Chief Glenn DeLaura. | Plaintiff's Decl., ¶ 6. |
| 4. Fire Captain Abad is Filipino and Assistant Chief DeLaura is part Portugese and Filipino. They never represented themselves to Plaintiff and other employees at the Fire Station as being Hawaiian and are not considered to be Hawaiian by Plaintiff or by the other personnel at the Fire Department. | Plaintiff's Decl., ¶ 7. |
| 5. In Plaintiff's work with Captain Abad and Assistant Chief DeLaura, Plaintiff observed that Captain Abad and Chief DeLaura were friends. | Plaintiff's Decl., ¶ 8. |
| 6. In 1998, conflict between Plaintiff and fellow employee, Captain Abad started to develop, when Captain Adad's continuing non-compliance with the Navy's rules and regulations were ignored by Captain Abad's supervisors, despite protestation by Plaintiff. | Plaintiff's Decl., ¶ 9; Def. Memo pg. 3 ¶ 2; Def. Exh. "1" pg. 2, ¶ 3. |

| | |
|---|---|
| 7. Plaintiff made complaints to his superiors in the Fire Department about improper and/or unlawful activities conducted on government premises by Captain Abad, including: "raising pigs, fish and escargot on Fire Department time and property, failing to properly maintain Department equipment, and taking government property for his own use", including the Fire Department's ice machine, for his personal use. Fire Department management and Assistant Chief DeLaura ignored Plaintiff's complaints and supported Abad. | Plaintiff's Decl., ¶ 10; Def. Exh. "31", Section IV Analysis, pg. 7, ln. 2-6. |
| 8. On October 10, 2001 Captain Abad filed a false "breaking and entering" complaint against Plaintiff regarding a government ice machine. | Plaintiff's Decl., ¶ 12; Pl. Exh. "B". |
| 9. Plaintiff was appalled and extremely upset (physically and emotionally), that the Agency's managers were completely unconcerned regarding Captain Abad's violent threat against his life. | Plaintiff's Decl., ¶16; Pl. Exh. "F", pg. 2, ¶ 4; Exh. "A", pg. 62, ¶ 15. |
| 10. Plaintiff was ordered transferred in front of his men, he was humiliated and was treated like he had committed a wrongful act in retaliation for complaining of Captain Abad's illegal activities and for trying to protect his own safety. | Plaintiff's Decl., ¶, 27; Pl. Exh. "A", pg. 62, ¶ 15. |
| 11. Plaintiff received medical attention as a result of his fear, anxiety and depression due to the death threat and was disabled and unable to return to work until November 2002. | Plaintiff's Decl., ¶ 3, 18; Pl. Exh. "A",pg. 60, ¶ 6; Exh. "F" ¶ 2; Decl. of Smith, ¶ 18,22,26; Pl. Exh. "L"-"Q". |
| 12. Plaintiff filed a civilian police report and secured a State of Hawaii Court temporary restraining order ("TRO") against Captain Abad on December 13, 2001. | Plaintiff's Decl., ¶ 17; Decl. of Smith, ¶ 7-8, Pl. Exh. "H". |
| 13. Plaintiff learn that when served with the TRO by the police, Captain Abad surrendered a firearm to them. | Plaintiff's Decl., ¶19; Pl. Exh. "F", pg. 3, ¶ 4; Pl. Exh. "A" pg. 60, ¶ 6. |
| 14. After the death threat, Plaintiff was denied his request to be placed on the Office of Workers Compensation Program ("OWCP") traumatic injury leave, but required to use his sick leave instead. | Plaintiff's Decl., ¶ 26; Pl. Exh. "F" ¶ 3; Def. Exh. "10", pg. 111, ¶ 6, 7, 14. |

| | |
|---|---|
| 15. Contrary to Assistant Chief DeLaura's assertions, he (DeLaura) gave Plaintiff a CA-1 claim form not a CA-2. This resulted in Plaintiff's claim for sick leave not being filed. ("I was told they weren't sure what happened to it". Patti K. Devita, Human Resource Specialist, Pearl Harbor), and a long delay in Plaintiff receiving any payment. | Plaintiff's Decl. Exh. "F" pg. 2, ¶5-6; Def. Exh. "10", pg. 110, ¶4; pg. 111, ¶ 5-6; pg. 112, ¶7; pg. 113, ¶ 14, 17. |
| 16. Despite the death threat, Plaintiff's supervisors took no corrective action in violation of their own "Workplace Violence Policy Statement": that incidents of threats "will be taken seriously" and "Supervisors must ensure that no reprisals are taken against employees who report incidents". | Plaintiff's Decl., ¶ 22-23; Pl. Exh."C", pg.4,lns 23-25; pg. 5 lns. 1-2; Pl. Exh. "D". |
| 17. As a result of obtain the TRO on October 25, 2001, Plaintiff was punished by being transferred miles away from the fire station near his home where he had successfully worked for years with his same crew and no corrective action was taken against Captain Abad. | Plaintiff's Decl., ¶ 27; Pl. "A", pg. 62, ¶¶ 15& 17; pg. 62-63. |
| 18. Assistant Chief DeLaura testified on behalf of Captain Abad, at his criminal trial in Federal Court on October 16, 2002 for terroristic threatening and was ready to testify on Captain Abad's behalf re: further criminal violations of the TRO-Injunction requiring him to stay away from Plaintiff Kaopua. | Plaintiff's Decl., ¶ 21; Pl. Exh. "R". |
| 19. Captain Abad again violated the State Court's TRO-Injunction and the matter was accepted for a second criminal prosecution. | Plaintiff's Decl., ¶ 29; Pl. Exh. "G". |
| 20. Plaintiff wanted to know if the threat to his safety had been removed at work, but the Agency repeatedly told him that "they were working on it". | Pl. Exh. "A", pg. 62, ¶ 17. |
| 21. Plaintiff did not become aware that the basis for the adverse employment actions and hostile work environment was probably due to discrimination until after several conversations with his counsel (Elbridge W. Smith) in July 2002. Thereafter, Plaintiff promptly contacted his EEO Counselor. | Plaintiff's Decl., ¶ 32 Pl. Exh. "F", ¶ 12-13 |

| | |
|---|---|
| 22. Plaintiff did not know nor was he aware of the 45 day deadline to contact an EEO Counselor for discrimination complaints prior to Plaintiff's consult with his Counsel in July 2002. | Plaintiff's Decl., ¶ 32; Pl. Exh. "F", ¶ 12-13; Decl. of Smith, ¶ 21. |
| 23. At that time, Plaintiff remembered that when Hawaiian fireman David Reid died on duty while drinking with other firemen, that Plaintiff inquired of Chief Gilding just what action would be taken. He was informed that no action would be taken. Unbelievably, the matter was just swept under the rug and no action was taken against the non-Hawaiian Acting Captain. | Plaintiff's Decl., ¶11; Pl. Exh. "A", pg. 65, ¶ 26. |
| 24. Due to the threat on Plaintiff's life, and the resulting psychiatric/psychological disability, Plaintiff and his doctors repeatedly requested that the Agency agree to accommodate Plaintiff with a safe and appropriate workplace. | Plaintiff's Decl., para 31; Decl. of Smith, ¶ 18-21; Pl. Exh. "K"-"M". |
| 25. On January 25, 2002 Plaintiff's treating psychologist Dr. Dave, requested: "an appropriate resolution to the ongoing threat of violence originating in Caption Kaopua's work environment", so that he might be able to return to work. | Decl. of Smith, ¶ 30; Pl. Exh. "P". |
| 26. By April 24, 2002 there had been no reasonable response to Plaintiff's request for a safe work environment or a reasonable accommodation. | Plaintiff's Decl., para 31; Decl. of Smith, ¶ 18-21; Pl. Exh. "K" & "L". |
| 27. The Agency had not provided Plaintiff a reasonable accommodation for his disability by August 27, 2002. | Decl. of Smith, ¶ 27; Pl. Exh. "M". |
| 28. On September 16, 2002, eight months after Plaintiff's doctor requested a safe work environment for Plaintiff, the Agency finally represents it can ensure Plaintiff's safety at work. | Def. Exh. "27". |

Respectfully submitted.

Dated: Honolulu, Hawaii July 03, 2006.

_____
Elbridge W. Smith
Attorney for Plaintiff

-5-