IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA, | ) **CIVIL NO. CV04 00723 JMS / KSC** |
| | ) |
| Plaintiff, | ) DECLARATION OF |
| vs. | ) MILTON K. KAOPUA; |
| | ) EXHIBITS "A-"G" |
| FEDERAL FIRE DEPARTMENT; | ) |
| DONALD C. WINTER, Secretary, | ) |
| Department of the Navy, | ) |
| | ) |
| Defendants. | ) |
| | ) |

H:\CLIENTS\Kaopua\DRAFTS\JSS Draft Decl Kaopua 062706 TUES.wpd

## <u>DECLARATION OF MILTON K. KAOPUA</u>

I, Milton Kaopua, do hereby declare as follows:

1.      I am the Plaintiff in this matter and make this Declaration of my own personal knowledge, unless otherwise stated, and am competent to testify to the declarations stated herein.

2.      I am of Hawaiian ancestry and was raised in Hawaiian culture and tradition, have the usual Hawaiian coloring and physical features and proudly consider myself Hawaiian.

3.      My co-workers, friends and "ohana" all are aware that I am Hawaiian. My Hawaiian ancestry was well known to my co-workers and supervisors due to conversations I had with them over the years, since at least 1998.

4.      From 1998 until retirement in April 2004, I was an employee and Fire Captain with the Federal Fire Department, Department of the Navy ("Agency"), Naval Station, Pearl Harbor, Hawaii.   (Supervisory Firefighter, GS-0081-07), and assigned to the Naval Station Pearl Harbor Fire Station # 11 on Shift A.

5.      There are two shifts for firefighters at Station 11 and the Fire Captain on Shift B at that station was Captain Robert F. Abad (hereinafter "Captain Abad").

6.   While employed with the Federal Fire Department one of my superiors was Assistant Chief Glenn DeLaura.

7.   Captain Abad is Filipino and Assistant Chief DeLaura is part Portugese and Filipino. They never represented themselves to me and other employees at the Fire Station as being Hawaiian and are not considered to be Hawaiian by me or by the other personnel at the Fire Department.

8.   In my work with Captain Abad and Assistant Chief DeLaura, I observed that Captain Abad and Chief DeLaura were friends, but I did not know how close until Assistant Chief DeLaura testified at Captain Abad's criminal trial on his behalf.

9.   Conflict between me and fellow employee Captain Abad really started to develop, when I began to work with him at Station #11 and I brought to the attention of my superiors Captain Adad's continuing non-compliance with the Navy's and the Fire Department's rules, regulations.

10.  I made frequent complaints to my superiors in the Fire Department about the improper and/or unlawful activities conducted on government premises by Mr. Abad. These activities included raising pigs, fish and escargot on government property, during official time, and taking and using government property, including the Fire Department's ice machine, for his personal use. Fire Department management, including Assistant Chief DeLaura tended to ignore my complaints and supported Abad.

11.  Attached hereto as Plaintiff's Exhibit "A", is a true and correct copy of my Affidavit, dated July 16, 2003, which was provided as part of the record in my equal employment opportunity discrimination complaint investigation and which is part of the Agency's official record.

12.  On October 10, 2001 Captain Abad filed a false "breaking and entering" complaint against me regarding a government ice machine. I was told this by Police Officer Hallberg.

13.  Attached hereto as Plaintiff's Exhibit "B", is a true and correct copy of the Incident Report filed by Police Office Colin A. Hallberg, Incident Number 016281303509, dated 2001/10/24, produced by the Agency in this matter, as

part of the Agency's official investigative record, which includes the information Police Officer Hallberg told me.

14. I was first generally informed about Captain Abad's threatening statements on October 13, 2001 from Police Officer Hallberg at the Security office. Police Officer Colin Hallberg informed me that Captain Abad accused me of cutting off his (Abad's) personal lock on a government owned ice machine kept at the fire station and had filed a complaint accordingly. I told my superiors about being threatened by Abad.

15. I did not learn of the specific shooting threat from Police Officer Hallberg, until October 23, 2001. Specifically, Police Officer Hallberg informed that the Captain Abad admitted to Police Officer Hallberg that he did not see who had cut the lock off, but when questioned, Captain Abad accused "Fire Capt. Milton Kaopua of cutting the lock." Captain Abad then told Police Officer Hallberg that he was "tired of Mr. Kaopua" and "I guess I'll just have to shoot him." When the Police Officer Hallberg warned him about making threats, Captain Abad affirmed his threat and stated "Well, that's what it's coming to."

16. After hearing of the shooting threat I was extremely upset (both physically and emotionally) that the Agency's managers were completely unconcerned regarding Captain Abad's violent threat against my life. It seemed to me that they condoned Captain Abad's death threat.

17. Concerned with my safety, I filed a civilian police report and then secured a State of Hawaii Court temporary restraining order ("TRO") against Captain Abad. (See Declaration of Elbridge W. Smith).

18. I also sought medical attention because of these matters, as set forth in my attached other statements and medical records.

19. The reality and seriousness of the threat really "hit home" when I learned that, when served with the TRO by the police, Captain Abad surrendered a firearm to them. See also Pl. Exh. "F", pg. 2, para. 4.

20. I then learned that due to Captain Abad's death threat against me, the Navy Investigative Service had accepted the case for criminal investigation and eventually Captain Abad was prosecuted by the U.S. Attorney.

21. On October 16, 2002, at the criminal trial in Federal District Court, on charges of terroristic threatening in the second degree, Assistant Chief DeLaura testified on behalf of his friend, Captain Abad. Assistant Chief DeLaura also appeared several times in State criminal court ready to testify on Captain Abad's behalf when Captain Abad was being charged with further criminal violations of the TRO-Injunction requiring him to stay away from me.

22. Magistrate Judge Kevin C. Chang's ruling in the criminal case, while not finding Captain Abad guilty beyond a reasonable doubt, admonished and chastised both Captain Abad and the Agency when he noted, on the record, "It also appears to the Court ... that the threat or the statement was a violation of the work place violence policy which is set out in Government's Exhibit 1. "

23. Attached hereto as Plaintiff's Exhibit "C", is a true and correct copy of Partial Transcript of Trial, dated October 16, pgs. 4-5 in United States of America v. Robert F. Abad, Criminal Case No. 02-309.

24. Attached hereto as Plaintiff's Exhibit "D", is a true and correct copy of "Workplace Violence Policy Statement", Government's Exhibit "1" in United States of America v. Robert F. Abad, Criminal Case No. 02-309.

25. Assistant Fire Chief DeLaura acknowledged under oath that Captain Abad "did use inappropriate language and was viewed as a third party threat," and that Captain Abad was disciplined.

26. Attached hereto as Plaintiff's Exhibit "E", is a true and correct copy of the Affidavit of Glenn T. DeLaura, dated July 16th, 2003, which was provided as part of the record in my equal employment opportunity discrimination complaint investigation.

27. Attached hereto as Plaintiff's Exhibit "F" is a true and correct copy of the Declaration of Milton Kaopua, I filed as Appellant in Milton Kaopua v. Department of Navy, Docket No. 01A43922, EEOC proceeding, dated August 20, 2004, with attachment "1" and "2".

28. I confirm as true each of my statements made in the Declaration of Milton Kaopua, dated August 20, 2004. (Plaintiff's Exhibit "F").

29. Because Captain Abad again violated the State Court's TRO-Injunction, the

4

Honolulu Prosecuting Attorney accepted this matter for a second criminal prosecution.

30. Attached hereto as Plaintiff's Exhibit "G" is a true and correct copy of the Prosecutor's September 23, 2003 letter to Mr. Kaopua.

31. Due to the threat on my life, and the resulting psychiatric/psychological disability I and my doctors repeatedly requested that the Agency agree to provide and me with a safe and appropriate workplace, but to no avail.

32. As represented in my Declaration of Milton Kaopua, dated August 20, 2004. (Plaintiff's Exhibit "F"), I was not aware of the 45 day deadline to contact an EEO Counselor for discrimination concerns or complaints and I did not become aware that the basis for the adverse actions and work environment was probably due to discrimination until after several conversations with my counsel (Elbridge W. Smith), in July 2002. Thereafter, I promptly contacted my EEO Counselor.

33. I retired as a Captain (Supervisory Firefighter, GS-0081-07) with the Federal Fire Department, Department of the Navy, Naval Station, Pearl Harbor, Hawaii, having reached mandatory retirement age with 35 years of service. I was employed by the Naval Station Federal Fire Department since 1969; I became a captain in 1985 and I served as Captain at Station 11 for over 3 years. At the time of my retirement I was still covered by Office of Workers Compensation Program for medical care relating to my 2001 on-the-job illness/injury, involving Captain Abad.

I declare under penalty of perjury under the laws of the United States of

America that the foregoing is true and correct.

Dated: Honolulu, Hawaii, June 28, 2006.

Milton K. Kaopua