# EXHIBIT "A"

Name: Milton K. Kaopua

# AFFIDAVIT

State of Hawaii
County of Honolulu

I, Milton K. Kaopua, at Pearl Harbor, Hawaii, make the following statement under oath or affirmation. Pursuant to Public Law 93-579 (Privacy Act of 1974), as an individual supplying information for inclusion in a system of records, I have been informed of the following:

EFFECTS OF NONDISCLOSURE: Disclosure of information by me is voluntary; however, I realize my failure to respond could result in a recommended disposition of the case on the basis of information available. Witnesses who are Department of Defense employees may be subject to administrative action for failure to testify.

AUTHORITY: The authority to collect the information requested by this interview is derived from one or more of the following: Title 5, Code of Federal Regulations, Sections 5.2 and 5.3; Title 5, United States Code, Sections 1302, 1303, 1304, 3301, and 3302; Executive Order 11478, as amended; Executive Order 10577; and 29 CFR 1614.

PURPOSE AND USES: The information supplied will be used as part of the record in an equal employment opportunity discrimination complaint or grievance investigation. The record will be furnished to designees of agencies and departments of the Federal Government in order to resolve the complaint or grievance. The record may also be disclosed to any agency of the Federal Government having oversight or review authority with regard to Office of Personnel Management or Department of Defense activities, to the Federal intelligence agencies, or to others as published in the Federal Register.

1. What is your medical condition that you allege is a disability?

I am fearful – I suffer from anxiety, stress, and depression.

2. Does the medical condition impact upon any of your major life activities, such as walking, standing, sitting, bending, lifting, seeing, hearing, performing manual tasks, caring for yourself, thinking, interacting with others, concentrating, or any other major life activity?

Yes, it makes me feel fear. I was comfortable before, but now I feel I need to follow the rules exactly. It also affects my men and they are always complaining to me, which causes me more stress.

3. With regard to the major life activities that are affected by your medical condition, what are your limitations, i.e., does the medical condition prevent you from performing the activity at all, or does it merely impact the activity under certain conditions and/or at certain times?

It prevents me from doing a lot of things that would put me in contact with Mr. Abad. I'm afraid to go fishing, throw a net, or swim because Mr. Abad is a fisherman and I might come in contact with him. I'm afraid to go on picnics with my family and I feel I need to have a large crowd around. I'm afraid to go to the Credit Union and to the stores, or even a movie, because I'm afraid of coming in contact with Mr. Abad. I'm always looking around to see if Mr. Abad might be there.

**EXHIBIT A**
**59**

Page 1 of 17 pages

Affiant's Initials: MKK

Affiant's Initials: MKK

4. Is the above limitation affected by your use of medication that assist you and/or have you developed any behavior that compensates for that limitation?

I was taking medication for stress and anxiety, but I only take it when I feel I need it. I take the medication when I feel stress coming on. For example, when the Chief starts getting on me and I feel the stress coming on. I also go to weekly therapy.

5. Are there any adverse side effects caused by the medication? If yes, what are those side effects?

It sometimes causes constipation and dizziness.

6. When did the limitation first begin, and when did it end or when is it expected to end?

It started on the 23rd of October – when I first found out that Mr. Abad said he was going to shoot me. I was afraid because from the 10th of October to the 18th of October, Mr. Abad and his driver (Eric Pratt) would not talk to me, they would only write things on the chalkboard. I realized that Mr. Abad has a lot of hate for me and that's when I starting feeling a lot of fear. I still feel the fear, anxiety, and depression and I don't know when these feeling will ever end. I still feel Mr. Abad is going to shoot me – that he means what he says. I know that Mr. Abad owns a gun. I also know that he turned one gun into the police.

7. What is your education level and in what types of positions have you worked?

I graduated from high school. I am qualified to work as a Security Guard.

8. What types and levels of positions do you believe you are qualified for based on your education, training, and experience?

In addition to my current position, I've done some delivery work and roofing, but that was a long time ago.

9. Are you prevented from working in any of the above types and/or levels of positions because of your medical condition? If so, explain which ones and why you are prevented from working in those positions?

No. At first I could not work at all, but now I can, with therapy and medication.

10. Is your disability one where you cannot work anywhere that would put you in contact with Mr. Abad, but you can perform the full scope of duties as a Fire Captain at any Fire Station that does not put you in contact with Mr. Abad?

Yes, I also take my meds when needed and go to weekly therapy.

11. Name the Fire Stations that you cannot work at and explain why.

I cannot work at Station #14 because it brings back memories of Chief DeLaura trying to force me to work there. Other than that, I can work at any station that Mr. Abad is not assigned to and he is currently assigned to Station #9.

12. Are you able to perform the full scope and duties of your position of record as long as you do not come in contact with Mr. Abad or is there a specific aspect of your job that you are unable to perform because of a specific medical condition that you consider to be a disability?

Yes, I can perform all the duties and responsibilities of a Station Captain as long as I don't come in contact with Mr. Abad.

13. When did management first become aware of the fact that you had a mental disability?

I don't know when they got Dr. Mercado's statement of 11/23/01.

14. When did you first request reasonable accommodation? What specific accommodation did you request; how did you make this request?

I told Acting Chief Kaauwai on October 27, 2001 that I was threatened by Captain Abad and I was taking Traumatic Injury leave and going to my doctor for treatment. On October 25, 2001, I told Chief Jones and Chief Kaea that the only thing I wanted was to stay at Station



#11 for two years, until I retire. I wrote in the station log and Chief DeLaura took the log and it is no longer there.

15. What happened after management became aware of your mental disability and your request for accommodation?

On October 25, 2001, Chief Jones humiliated me by taking me out on the apparatus deck and in front of all my men stated that firefighters would be transferred, starting with Captains. On December 2, 2001, I was transferred to Station #14, Shift B. This was his way of punishing me for the incident, instead of the person who made the threat. I called the Honolulu Police Department the same day and filed a temporary restraining order against Mr. Abad, since my supervisors were not going to do anything. I went to my doctor who put me on leave on October 27, 2001 because of the threat on my life and the fact that I was so fearful of Mr. Abad.

16. Is it your contention that you could have returned to work as soon as management reassigned Mr. Abad to another fire station? What did management have to do so that you could return to duty?

Yes, that was all I asked; I was not going to file any charges. I was willing to let it go if they just moved Mr. Abad to another station and I did not have to come in contact with him, but they would not do that; they moved me instead.

17. Did management talk to you about your mental disability and limitations? Did they ask you for medical documentation to substantiate your medical condition? If so, what was discussed and when was it discussed? When were you asked to provide medical documentation?

No management official has ever talked to me about my mental disability. Yes, they asked for medical documentation and those documents are in the file. Between October and December 2001, Chief DeLaura told me that I had to keep him apprised, on a weekly basis, of my condition. Between October and December 2001, I told Chief DeLaura that my doctor wanted to know if Captain Abad was removed, meaning the threat was removed. He repeatedly told me that they were working on it. On November 14, 2001, Chief DeLaura told

me that I was going to be transferred to Station #14 and this decision was final. My transfer was effected on December 2, 2001. Captain Abad was allowed to remain at Station #11. On November 20th, Chief DeLaura told me that they were transferring Abad to Station #9, Shift A. He told me this was because I had a restraining order on Abad and we could not both be on the same shift.

18. When did you provide management with medical documentation that described your mental condition? To whom was it provided?

Dr. Mercado sent a physician report to the personnel office and that document is dated October 29, 2001 and another dated November 23, 2001, and then more..

19. What happened next?

I felt that I was being punished when I was told they were sending me to Station #14, so I hired a lawyer. My depression and anger started and I stayed off from work and took the medication that my doctor prescribed. In fact, it was Detective Spencer (NRSC PH) who told me that I should stay home until they correct the problem.

20. Did you provide management officials with medical documentation that:

    a. Identifies your medical condition and describes your limitations?

Yes, I did, but it was spaced out over time.

    b. Provides information regarding when your limitations began and ended or are projected to end?

Yes, I always said that I could return to work if they returned me to Station #11, moved Captain Abad to another station, and assured me that it was safe to return. The OCWP nurse and Rehabilitation Specialist provided this information to management. They met with my doctors.

    c. Recommends any accommodation that you needed at the time of your request to management for an accommodation?

As stated above, I could return to work at any time after I was able to return to Station #11 and Abad was moved to another station where I would not come in contact with him.

21. What is the relationship between your mental disability and the requested accommodation and how would your requested accommodation allow you to perform your job?

If they let me work at Station #11 and moved Abad to another station, it would have relieved my fears and ended my depression and anxiety. My doctor said I needed assurances that I could return to work in a safe environment. I never received these assurances from the agency; these assurances came from an OWCP rehabilitation specialist who told me that Chief DeLaura said I would not any contact with Captain Abad and there would be no violation of the restraining order. With these assurances, I immediately returned to work on or about November 22, 2002.

22. Did management provide you with the requested accommodation, or any other accommodation?

As stated above, it was sometime in November 2002 that the OWCP rehabilitation specialist told me that I could return to Station #11, and assured me that I would have no contact with Captain Abad.

23. If you were accommodated why the complaint and how were you harmed?

I was harmed financially, I felt humiliated when management would not take any immediate action. I had numerous problems with my leave transfer requests and the delays in processing my OWCP claim. They did so many things to hurt me and humiliate me.

24. Who are you claiming discriminated against you when you were denied reasonable accommodation?

Chief DeLaura, Chief Jones, Chief Kaea, and Hazel Wong.

25. a. Regarding the harassment allegation, are you saying Mr. Abad discriminated against you when he harassed you or that management officials discriminated against you when they became aware of the harassment but failed to take prompt and effective correction action?

Management discriminated against me when they failed to take action on the threat. They failed to take the threat seriously and failed to take action based on the zero tolerance law.

    b. Which management officials are you claiming discriminated against you from November 1998 to October 2002 when you were subjected to a hostile work environment?

Chief DeLaura, Chief Jones, and Chief Kaea.

26. What is your proof that you were subjected to a hostile work environment because of your:

    a. Race and national origin?

On of my men died in 1998 or 1999 and his name was David Reid – he was Hawaiian. He died on duty and I was not at work that day. The men were on duty drinking alcohol and they ran out of beer. Two of the men went out to buy more beer and the car flipped over and David Reid was killed. After the incident I talked to Chief Gilding and asked him what they were going to do because my men were drinking and he said they weren't going to do anything. I think that because Mr. Reid was Hawaiian, they just shoved the matter under the table and didn't take any action. If Mr. Abad had killed me they probably would have shoved that under the table too. The Acting Captain, when David was killed, was Kimo Lake and nothing happened to him, probably because he isn't Hawaiian.

    b. Religion?

When I called Chief DeLaura on November 4, 2001 and told him that my doctor wanted to know the status on Abad and what was being done to protect me, he told me that I should not



bother Captain Abad because he is a good man and he said you know that Captain Abad relieves you to go to church. I told him that church and religion had nothing to do with this. He should not have said anything about religion.

    c. Mental disability?

They thought I wasn't going to do anything. It was wrong what Abad did and they did nothing to correct the problem. They would not give me a safe work place.

27. Which co-worker subjected you to a hostile work environment?

Captain Abad – when he threatened to kill me.

28. When did you first notify a management official about the harassment? Whom did you notify and what did you say?

In July 2001 I told Chief Gilding that Captain Abad was not correcting Mr. Pratt's conduct regarding his uniform (he was not wearing a uniform). Chief Gilding did not say anything and did not correct the problem. In 1998 I told Chief Gilding that Captain Abad was changing the hoses that I put on the fire apparatus when he came on duty. I told Chief Gilding that Abad was blaming me and my men for throwing cigarette butts in the fishpond. I also told Chief Gilding that Abad was raising pigs and his pigs were digging up the yard and my men were complaining. Chief Gilding didn't do anything, so I videotaped these problems.

29. a. When and to whom was your second report of harassment? What did you say you wanted to have done and what was the response?

On 9/11, the two shifts (A and B) had to work together, but I was still in charge on the A shift days. I told Chief Gilding that Captain Abad had to be ordered to move his car by security because he did not want to listen to me when I told him to move his car. I also told Chief Gilding that Abad and his men were not helping us clean the station. Chief Gilding told me that if I had called him on the day this happened, he would have had Abad move his car.

b. When and to whom did you make your third report of harassment? What did you say you wanted to have done and what was the response?

On October 20, 2001, I told Chief Yuen that Eric Pratt was parking his car in an unauthorized area. Pratt then parked his car in the Station and it stayed there until 7 PM.

30. Explain your allegation that management failed to take prompt and effective corrective action. Who did not take prompt and effective corrective action. What should they have done and why?

I wanted Chief Gilding to tell Chief DeLaura about my concerns and to my knowledge he did not because no action was taken. As for the threat, they took too long to return me to Station #11 and move Abad to another station and they took too long to give me assurances that I could safely return to work. Mr. Abad again recently violated the TRO and Chief DeLaura's orders to stay away from me and Station 11.

31. a. Did you take out a TRO against Mr. Abad?

Yes, in October 2001 and it expires in December 2003.

b. Did NCIS investigate the threat made by Mr. Abad? If yes, do you know the results of their investigation?

Yes, Detective Spencer investigated it, and it eventually went to the US Attorney's office for prosecution. Captain Abad was found not guilty.

32. Did anyone else experience similar harassment from Mr. Abad and was it also reported and ignored?

I don't know.

33. Management says you and Mr. Abad bickered about many things over the years and you both received Letters of Caution in September 2001, but you never reported any harassment charge or claim that you were being subjected to hostile work environment until after Mr. Abad accused you of cutting the lock on the ice machine. Is this true? If no, what is?

As far as I am concerned the things that I reported above was harassment and I reported the harassment to Chief Gilding. I do not feel that I deserved the Letter of Caution that I received from Chief Gilding.

34. a. When did you first find out that Mr. Abad made a threatening comment and how did you find out about it?

On October 13, 2001 when Officer Colin Hallberg told me about the threat.

   b. Did you ever hear him threaten to shoot you? Have you ever heard him say anything threatening to you? If yes, explain.

No, to both questions.

35. When did Chief DeLaura become your Area Chief? Chief DeLaura says he met with you on October 11, 2001 and you never said anything about feeling harassed or threatened and anything about the incident concerning the ice machine. Is this correct? If not, what is?

He became my Area Chief on September 21, 2001. Yes, I didn't say anything about the ice machine matter because I didn't know about the threat until I found out about it two days later.

36. Chief DeLaura says it was October 17, 2002 when you told him that Mr. Abad accused you of cutting the lock and he told you be was coming to the station the following day to discuss this matter. Is this correct? If no, what is?

He called me on October 17 and asked me if one of my men wanted to work on Friday. He never mentioned anything about the ice machine. He then asked me what the problem was between Captain Abad and me and said the Deputy Chief wanted to transfer both of us. I told him that I didn't have a problem and it was Abad who threatened me and he should go to security to find out about the threat and he told me that was not his job. He asked me about a disk from the other shift and I told him that it was in the incoming mail.

37. He says he met with you on October 19, 2001 to discuss the mail and ice machine incident?



He never talked to me on October 19.

38. He says it was at the end of your conversation, as he was leaving, that you told him that Abad made a threatening statement, but you did not appear fearful or worried about it. Is this correct? If not, what is?

He never came to talk to me.

39. During what period in time was Chief Gilding your Area Chief?

From 1998 to September 2001.

40. During what period in time have you stayed off from work because of your mental disability?

October 27, 2001 to November 22, 2002. Also other various days from time to time.

41. a. Who are you claiming discriminated against you when your OWCP claim was delayed, misprocessed and interfered with?

Chief Jones and Chief DeLaura and Hazel Wong.

   b. Explain your allegation that the claim was misprocessed and interfered with.

In October 2001, I told Acting Chief Kaauwai that I wanted to be placed on TI because of the threat on my life and he told me he was placing me on sick leave, but I didn't want to argue with him – I already told him that I wanted to be placed on TI. Then I told Chief DeLaura that I wanted to be placed on TI and he said, "no" and he was placing me on sick leave. Chief DeLaura gave me a CA-1 form and I went to my lawyer (Mitchell Burns) and I filled it out. I turned it in to Acting Captain Kiyan and asked him to give it to Chief DeLaura. I called Chief DeLaura and told him that the form was there and to pick it up. I turned it on November 26 and I never received a receipt from Chief DeLaura saying that it was going to be filed. As of January 2, 2002, the claim was still not processed so I went to see another attorney (Elbridge Smith). They said that I didn't sign everything and Chief DeLaura had not done his report. My attorney then told them to get it done. We tried to get the right form

because I was told I turned in the wrong form. My lawyer finally got the correct form and I signed it (can't remember when) and turned it in. We still had to wait. In April 2002, I got a call from the Safety Officer (Jim Luhia) and he informed me that he was just told to take my case because it was TI. He told me that Chief Jones and Chief DeLaura violated my rights when they did not investigate my TI right away. Also Jamie Neil, a OWCP nurse, tried to help me get back to Lualualei, but to no avail because they said I had to go back to Station 14. Ms. Figueroa is a Rehabilitation Counselor and she went to see DeLaura and Jones. First they agreed to meet but then refused to meet with us and my doctor in October/November 2002. She was trying to get me back to work and make sure the environment that I was working in would be safe and I would be in a comfortable state and was protected and Abad would not harass me and there would be no reprisal or contact with Abad.

42. a. What did Chief Jones and Chief DeLaura do that was discriminatory?

When I reported the threat on my life, they did not take any action.

   b. What should they have done?

They should have taken action comply with the safety regulations. They should have taken action when I reported the threat.

43. What is your proof that Chief Jones, Chief DeLaura, Chief Kaauwai and Hazel Wong were motivated by your:

   a. Race and national origin –

The same proof that I already stated above.

   b. Religion –

The same proof that I already stated above.

   c. Mental disability –

The same proof that I already stated above.

44. a. Who are you claiming discriminated against you when management failed to inform you of correct advance sick leave procedures and rights, failed to timely process the request, and denied your request for advance sick leave?

The Fire Department – Chiefs DeLaura and Chief Jones.

   b. What did each person named above do that was discriminatory?

They didn't help me or process my action.

45. Your attorney's letter requesting advance sick leave is dated 2/2/02 and Chief Jones approved the nine days on February 13, 2002. Do you consider this untimely?

I don't think so.

46. a. Chief Jones says firefighters have a mandatory retirement age of 57 years old and on February 13, 2002, you had one year and eight months of service remaining after deduction of six months of absence based on your psychiatrist's letter of January 25, 2002. Therefore, he was only able to grant you 9 days of advanced sick leave because it would take you one year and two months to repay the advanced leave and there was no guarantee you would be able to return to work after 6 months. Did you get the 9 days of advance sick leave?

I did get the 9 days of advance sick leave.

   b. In light of what Chief Jones explained to you, why do you believe you were entitled to more?

He deliberately let me take all my sick and annual leave and waited until I used it up and then said I could have 9 days. I would not have had to take any leave if they had left me at Station 11 and moved Mr. Abad – then I wouldn't be here. They should have put me on worker's compensation from the beginning and not let me use sick and annual leave. He said I could not get credit for the time I was injured and because they did not know when I would come back.

47. What is your proof that the 30 days was denied because of your:

   a. Race and national origin?

The same reason that I already stated above.

   b. Religion?

The same reason that I already stated above.

   c. Mental disability?

The same reason that I already stated above.

48. How were you harmed?

I had no money and had to borrow money from my family and church – I had to go on LWOP and used up all my annual and sick leave. All the stress, pain, anxiety, and depression

49. Regarding the allegation that management failed to inform you of correct leave transfer program procedures, and failed to timely process your request, who are you claiming discriminated against you?

The Fire Department discriminated against me. The same people who I named above.

50 a. Explain your allegation that management failed to inform you of correct leave transfer procedures. Who failed to inform you? Did you ask?

The Fire Department and Hazel Wong did not tell me about using the leave transfer program. No, I never asked about the procedures, I went through my lawyer.

   b. Explain your allegation that your request was untimely processed.

They did not distribute the notice to the stations. I called various stations and was told it was not posted. I called my lawyer and he turned around and called Hazel Wong and she said that it was done, but it wasn't. As another example, Chief Ontinaro called me and told me that I had a letter from the Naval Station's Commanding Officer and the letter was dated in February, but I didn't get a copy of the letter until April. The letter informed me that my leave transfer request was approved and if I did not get any response I could go Navy-wide. If I had received the letter earlier I could have gone Navy-wide and received more leave.

51. Explain your allegation that the request was denied. Who denied it and when?

My sister-in-law found out that I was requesting leave donations and she told me that she was donating 40 hours. She turned it in and Hazel Wong told her that she couldn't donate any leave because I was receiving worker's compensation. I called my lawyer who called Hazel Wong and he told her that she was wrong and I was not receiving any worker's compensation, so why wasn't I eligible for donated leave. Then she realized that she was wrong and she turned around and told my sister-in-law that she could donate leave.

52. What is your proof that this was done because of your:

　　a. Race and national origin --

For the same reasons that I already stated above.

　　b. Religion --

For the same reasons that I already stated above.

　　c. Mental disability

For the same reasons that I already stated above.

53. a. Ms. Lucas says you contacted her on 5/13/02 and said you wanted to expand the area of consideration for leave transfer. There was some confusion about your eligibility for transferred leave because you were receiving compensation from OWCP and one person who

wanted to donate leave was told you could no longer receive leave. Who was responsible for the confusion?

It was Hazel Wong who caused the confusion.

    b. Did you consider this discriminatory? If yes, why?

Yes, I looked at the letters that she wrote and they were heartless and she is part of management.

    c. To your knowledge, did you receive all the transferred leave that you were eligible to receive and that was donated to you?

I don't know. They were supposed to go Navy-wide and didn't.

    d. How were you harmed?

I didn't have money and was stressed.

54. Regarding the allegations that management failed to properly process your advance sick leave and leave transfer requests, is there anyone who was similarly situated with you, but treated differently? How were you similarly situated? What was the difference in treatment?

There was a dispatcher (I don't remember his name) who requested donated leave and Chief Gilding came down with the donated leave application and James Carter donated leave to this person. Chief Gilding brought the document to the fire station and asked if anyone wanted to donate leave and Carter signed up. The dispatcher was white; I don't know his religion; he used a cane to walk.

55. What is the relief that you are requested to resolve your complaint?

I want to be compensated for everything that happened to me. Also my attorney fees. I want fair and equal treatment and all the stations supplied with leave donation forms; the harassment stopped; no reprisal; make my job safe; follow the rules and regulations; enforcement; punish those who violate the rules and regulations, even if they are Chiefs; and

training/classes on workplace violence and they should enforce the zero tolerance regulations.

56. What is your height and weight?

I am 5' 8 " and my weight is 200 pounds.

57. Do you have anything else to add?

No.

## END OF STATEMENT

*I have read the above statement, consisting of 17 pages, and it is true and complete to the best of my knowledge and belief. I understand that the information I have given is not to be considered confidential and that it may be shown to the interested parties.*

Subscribed and sworn before me
at: _Pearl Harbor, HI_
on this _16th_ day of _July_ 2003

_(Signature)_
_Cynthia Ah_
_OCI Honolulu_

_Affiant's Signature_

_Title_