# SMITH  HIMMELMANN
Attorneys at Law • A Law Corporation
**ELBRIDGE W. SMITH**  [HI #2079]
745 Fort Street, Suite 311
Honolulu, Hawaii  96813
Telephone No.:  (808) 523-5050
Fax No.:  (808) 538-1382
Email: shlaw@hawaii.rr.com

Attorneys  for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA, | ) **CIVIL NO. CV04 00723 JMS / KSC** |
| Plaintiff, | ) |
| vs. | ) |
| | ) |
| FEDERAL FIRE DEPARTMENT; | ) |
| GORDON ENGLAND, Acting-Secretary, | ) |
| Department of the Navy, | ) Judge J. Michael Seabright |
| | ) |
| Defendants. | ) Date: August 8, 2006 |

H:\CLIENTS\Kaopua\Plead - USDC\08-08-06 Plaintiff's Supplemental Memo.wpd

## Defendant's Supplemental Memorandum Re: Tolling

In response to the invitation of Judge J. Michael Seabright, issued at the August 1, 2006 hearing on Defendant's Motion to Dismiss or in the alternative, Motion for Summary Judgment, Plaintiff Milton K. Kaopua, by and through Counsel, hereby submits this Supplemental Memorandum to address the question of the legal effect of having counsel in determining when the 45-day SOL begins to run (tolling).

Plaintiff agrees that generally under the holding in *Leorna  v. U.S. Dep't of State*, 105 F.3d 548 (9th cir. 1997), once a claimant retains counsel, equitable tolling ceases.  The Ninth Circuit held that equitable tolling ceased because the plaintiff had "gained the 'means of knowledge' of her rights and can be charged with constructive knowledge of the law's requirements," citing  *Stallcop v.*

*Kaiser Found. Hosps.*, 820 F.2d 1044, 1050 (9th Cir.), cert. denied, 484 U.S. 986 (1987).[1]  But the factual circumstances of these cases and that of Plaintiff Kaopua are quite different.

In each of those cases the Plaintiff retained counsel to purse his/her rights following from factual circumstances (acts and omissions) which had already occurred.  In this case Plaintiff initially sought first counsel (not Smith Himmelmann) to pursue a State claim under TRO statutes against Mr. Abad against future terroristic on and off work threatening (which he did) and to file a worker's compensation (OWCP) claim (which he also did).  When Mr. Kaopua later consulted and retained present counsel Smith, Plaintiff's initial and primary concern was the failure of the Navy to process his OWCP claim, which had not yet even reached the U.S. Department of Labor (which processes such claims for all Federal employees).

It was only over a period of months, that new harmful and hostile acts and omissions occurred, being months *after* he retained the Smith Himmelmann firm.  Neither Plaintiff Kaopua nor Smith Himmelmann, AAL, can be held to a standard of needing to file an EEO complaint before an act (or omission) occurs.

---

[1] This holding, or permutations of it, is the law in numerous Circuits of the United States. *See Mercado-Garcia v. Ponce Fed. Bank*, 979 F.2d 890, 896 (1st Cir. 1992) [age discrimination claim would not be tolled where claimant was represented by counsel in November 1988 and did not file his complaint until November 1989]; *Daugherity v. Traylor Bros., Inc.*, 970 F.2d 348, 353 n.8 (7th Cir. 1992) [claimant failed to file administrative claim within 180 days of the appointment of counsel]; *Beshears v. Asbill*, 930 F.2d 1348, 1351 (8th Cir. 1991) [in dicta, the Eight Circuit noted that there is no equitable tolling of the statutory period for filing a complaint once an employee acquires general knowledge of his rights or retains an attorney]; *Blumberg v. HCA Management*, 848 F.2d 642, 644 (5th Cir. 1988) [difficulty in obtaining counsel does not toll statutory period]; *McClinton v. Alabama By-Products Corp.*, 743 F.2d 1483, 1486 n.4 (11th Cir. 1984) [employee was aware of his rights and failed to consult an attorney, no equitable tolling]; *Vance v. Whirlpool Corp.*, 716 F.2d 1010, 1012-13 (4th Cir. 1983), cert. denied, 465 U.S. 1102 (1984) [Court upheld equitable tolling where plaintiff filed administrative claim within 180 days of contacting an attorney]; *Kocian v. Getty Refining & Mktg. Co.*, 707 F.2d 748, 755 (3d Cir.), cert. denied, 464 U.S. 852 (1983) [claimant's delay in redrafting EEOC'S charge letter not subject to equitable tolling where claimant was aware of the 180 day deadline]; *Keyse v. California Texas Oil Corp.*, 590 F.2d 45, 47 (2d Cir. 1978) [tolling improper where claimant was represented by counsel during the statutory period]; *Edwards v. Kaiser Aluminum & Chemical Sales, Inc.*, 515 F.2d 1195, 1200 n.8 (5th Cir. 1975) [no equitable tolling where claimant failed to administratively file within the statutory period or within 180 days of retaining counsel].

In this regard Counsel wishes to clarify his response to the Court's question during the hearing hereon, about what happened during the 45-day period immediately prior to Plaintiff filing the EEO complaint on July 25, 2002. Counsel was probably less than precise in referring to "the continuing nature of the reprisal and refusal to accommodate actions during this period," (as counsel can best recall his response). In retrospect, it now seems that the Court was asking counsel Smith to articulate one or more specific incidents which occurred during that 45-day period, which would be needed to make timely a longer series of hostile acts -- themselves mostly outside the 45-day period. In *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002), *aff'g in part and rev'g in part, Morgan v. Nat'l R.R. Passenger Corp.*, 232 F.3d 1008 (9th Cir. 2000), the Supreme Court held that "a hostile work environment claim ... will not be time barred so long as all acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period," *cited in, Lyons v. England, Secretary of the Navy*, 307 F.3d 1092 (9th Cir. 2002). In the case at bar, plaintiff alleges a hostile working environment based upon his race and ADA claims (including reprisal).

From April 24, 2002 through July 26, 2002 the parties exchanged several written and oral communications about Plaintiff Kaopua's doctors' requests for safety at the work site, needed assurances and procedures. The parties "argued" about what the doctors needed and what the Federal Fire Department Agency was not required to do. The Federal Fire Department Agency thus continued to deny the requested medical accommodation of "safety and protection."

During this same period the Agency incorrectly disputed Plaintiff Kaopua's right to claim leave transfer benefits while he was receiving OWCP benefits and/or receiving advanced sick leave. This dispute is reflected in written notes to the files maintained by Navy HRO personnel, now contained within the administrative EEO investigative file records (Report of Investigation – ROI). The Federal Fire Department was next denying Plaintiff his basic employee rights to benefits.

On June 22, 2002 Plaintiff's counsel received a message from United States Attorney Ed Kubo that they had no record of Mr. Kaopua's complaint about Capt. Abad's death threat having

reached their office, despite Plaintiff counsel's statement that Naval Investigator Special Agent Moses had informed him that such referral had been made the month before.[2]

Was the Navy's own Investigator, now an apparent part of an effort to deny Plaintiff his doctors' requested "safety and protection" accommodation, Plaintiff first asked? Plaintiff was upset that the Navy and the Federal Fire Department were still seemingly protecting Capt. Abad and allowing Capt. Abad the ability to continue to harass and threaten Plaintiff and his wife. At the July 18, 2002 meeting in counsel's office, Plaintiff stated "Nobody cares about the Hawaiians. Remember the Hawaiian Fireman David Reid who was killed and the matter was covered up within the Department? What can we do if the powers that be don't care and won't act." Each of these acts and omissions occurred within the 45-day window preceding Plaintiff's July 25 contact (filing) with the EEO office/counselor.

As referenced before, counsel Smith convened a meeting in his offices on July 18, 2002 with Plaintiff, his spouse, the OWCP nurse and his OWCP doctor to review the continuing sequence of uniformly negative and seemingly hostile actions taken against Plaintiff beginning back in November 2001 that involved his OWCP claim, and then over the next months his station assignments, his lack of pay, the denial and interference with his request for leave donations, and his continuing inability to be released to come back to work by his doctors because of continuing fear of, and danger from, Capt. Abad.

At that July 18, 2002 meeting each action taken by Plaintiff's employer was reviewed, comparing the normal and required course of agency actions with the Fire Department's actual actions, to determine if any pattern could be discerned. At that time Plaintiff and his wife remarked about the racial differences (*supra*), a slur against Plaintiff's religious practices, and the continuing failure to ensure a safe environment to which Plaintiff could return. Plaintiff recalled how Fire Chief Guilding had come personally to the station with the leave donation forms on behalf of a white (Caucasian) dispatcher who was having medical problems and needed leave; and that some

---

[2] Follow up with the NIS Special Agent and U.S. Attorneys Office later did produce an indication that the referral documents had been located and the matter would be pursued.

employee(s) donated leave to the white dispatcher. "They don't do that for the Hawaiians," Mr. Kaopua remarked.

The OWCP nurse then remarked about the complete uncooperativeness by Federal Fire Department Agency personnel in bringing Plaintiff back to work and she, the OWCP nurse, speculated Plaintiff would have to participate in rehabilitation training for another, different occupation. Plaintiff became visibly and extremely upset at such a prospect and remarked, "If Abad had killed me, the Department would just cover it up like they did with FireFighter Reid, a Hawaiian."

Plaintiff respectfully requests this Court to determine that the continuing individually minor events extending from November 2001 into (and after) July 2002 constituted a continuing pattern and practice of harassment and discrimination that the average reasonable person might well not recognize as being a pattern, until the sum total of the individual parts were sufficient to so suggest and, alternatively, that the last several of those individual minor events occurred during the 45 days immediately preceding July 25, 2002.

        Respectfully submitted,
        SMITH HIMMELMANN, Attys at Law

*/s/ Elbridge W. Smith*

        Elbridge W. Smith
        Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| MILTON K. KAOPUA, ) | CIVIL NO. CV04 00723 JMS / KSC |
| Plaintiff, ) | |
| vs. ) | CERTIFICATE OF SERVICE |
| ) | |
| FEDERAL FIRE DEPARTMENT; ) | |
| GORDON ENGLAND, Acting-Secretary, ) | |
| Department of the Navy, ) | |
| ) | |
| Defendants. ) | |

CERTIFICATE OF SERVICE

I HERE BY CERTIFY that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served upon the following at their last known address:

Served Electronically through CM/ECF:

Edward H. Kubo, Jr., United States Attorney, District of Hawaii
R. Michael Burke, Assistant U.S. Attorney
Room 6-100, PJKK Federal Bldg., Honolulu, Hawaii 96850

e-mail: Mike.Burke@usdoj.gov

Dated: Honolulu, Hawaii, August 8, 2006.

/s/ *Elbridge W. Smith*
_____
Elbridge W. Smith
Attorney for Plaintiff